Harold N. LEAVELL and Connie Linn
Leavell, husband and wife,
Appellants (Plaintiffs),

v.

Bennie L. LINN and Mary Pat Linn, husband and wife; Peter V. Linn and Trudy Linn, husband and wife; Eugene A. Linn and Ellen W. Linn, husband and wife, Appellees (Defendants).

Bennie L. LINN and Mary Pat Linn, husband and wife; Peter V. Linn and Trudy Linn, husband and wife; Eugene A. Linn and Ellen W. Linn, husband and wife, Appellants (Defendants),

v.

Harold N. LEAVELL and Connie Linn
Leavell, husband and wife,
Appellees (Plaintiffs).

Nos. 93–189, 93–190.

Supreme Court of Wyoming.

Nov. 18, 1994.

William P. Schwartz of Ranck & Schwartz, Jackson, for appellants in No. 93–189 and cross-appellees in No. 93–190.

Lea Jacobs Kuvinka and George Kuvinka of Kuvinka & Kuvinka, Jackson, for appellees in No. 93–189 and cross-appellants in No. 93–190.

Before GOLDEN, C.J., THOMAS, MACY * and TAYLOR, JJ., and McEWAN, District Judge (Retired).

McEWAN, District Judge (Retired).

On February 4, 1980, the principal parties to this action purchased ranch property from their parents. The conveyance was made to the parties as tenants in common. They also executed a *Co-Ownership Agreement* which provided, *inter alia*, that each owned a ⅙ interest in the property.[1] The agreement also provided that none of the parties to the agreement would institute an action to partition or divide the property without the written consent of all other parties. Nonetheless, Connie Leavell (nee Linn) and her husband brought an action to partition. In the first appeal, they contend the district court should have found that a partnership existed and then entertained an action to dissolve that partnership, and, hence, divide the real property among the partners despite the terms of the agreement. Connie's brothers opposed her action and sought attorney's fees. In the second appeal, they challenge the district court's determination that the Leavell's lawsuit did not constitute a breach of the co-ownership agreement, thus precluding the brothers' claim for an award of attorney's fees.

We affirm.

## ISSUES

A brief paragraph introducing the parties is necessary. Connie Linn Leavell is sister to Bennie L. Linn, Peter V. Linn, and Eugene A. Linn (Linn brothers). Harold Leavell is Connie's husband. Mary Pat Linn, Trudy Linn, and Ellen W. Linn are the spouses of the Linn brothers. Connie Leavell and her brothers owned a ranch in Teton County as tenants in common. The Leavells initiated this litigation, seeking to establish that the relationship between Connie Leavell and her brothers, as it related to ownership of the ranch, was a partnership. Her goal was to dissolve the partnership and/or to partition the ranch property. The Linn

brothers viewed her action as a breach of the provision of the agreement they had jointly executed which waived partition of the ranch for a period of forty years. Based on that alleged breach of contract, the Linn brothers sought to recover attorney's fees incurred in the defense of this lawsuit.

As appellants in Case No. 93–189, the Leavells ask that this court reverse the district court's conclusion that no partnership was formed and remand the case to the district court for supervision of the dissolution and winding up process under the Uniform Partnership Act, Wyo.Stat. §§ 17–13–101 (1989) *et seq.* The Linn brothers respond that the district court did not commit reversible error in holding that no partnership existed between the cotenants of the Linn Ranch.

As appellants in Case No. 93–190, the Linn brothers state this issue: Did the district court err in failing to grant them attorney's fees because the Leavells initiated an action for partition even though their agreement prohibited such action. The Leavells contend they did not breach the non-partition provision of the agreement and, therefore, the Linn brothers are not entitled to recover attorney's fees.

## FACTS

Eugene B. and Lilly L. Linn, husband and wife, owned a small ranch located in Teton County. The ranch was acquired by patent in 1913, after Eugene B. Linn's father had successfully completed the applicable homestead requirements. Over the years, parts of the ranch had been sold in order for the family to make ends meet and to acquire capital for other investments. In 1979, the children of Eugene B. and Lilly L. Linn became increasingly concerned that the family homestead would be sold, slowly but surely, until it was gone. Thus, they began devising a plan by which they could acquire the ranch from their parents, "in order to keep all or some significant portion of that land within family ownership." The elder Linns agreed to sell the ranch to their chil-

---

* Chief Justice at time of oral argument.

1. The four children who are party to this action purchased the interests of two of their siblings so

that the parties now each hold a ¼ interest in the ranch.

dren for $237,000 and the ranch was conveyed to them on February 4, 1980, as tenants in common. The children borrowed $60,000 as a down payment and gave their parents a promissory note and mortgage, with a term of forty years, in the amount of $177,000. The mortgage was, of course, recorded. The children did weigh the possibility of forming a partnership in order to facilitate purchase and management of the ranch but, ultimately, what each of them agreed to, and executed, on April 22, 1980, was a *Co-Ownership Agreement.* The $60,000 loan was repaid through the sale of a small parcel of the ranch, as well as by payments made by the children, but over the years they have barely managed to keep current on the interest due the parents on that note. The parents have never contemplated foreclosure.

The relationship between the children has deteriorated significantly as the years have passed. Part of the deterioration has been because of the inability of the siblings to reach anything resembling an agreement on what to do with the ranch. However, the heart of the controversy has been the Leavells' desire to have a significant portion of the habitable part of the ranch conveyed to them as a site for their home. Mrs. Leavell had lived on the ranch for many years before she and her brothers purchased it, and she had improved a cabin on the ranch as her home. She and her husband continued to use that cabin as their home, but they wanted to improve the building and believed they needed to "own" a significant parcel surrounding the cabin in order to justify making costly improvements.[2] The group was simply unable to reach an agreement on what should be done to accommodate the Leavells' requests. Of course, the Leavells perceive that the Linn Brothers were being unreasonable and the brothers perceived that, not

only were the Leavells being unreasonable, but also that accommodation of the Leavells' request for a homesite would have served to frustrate the future possibilities of subdividing the ranch. It is the Linn brothers' contentions that what Mrs. Leavell really wanted all along was to have the ranch partitioned. However, the agreement Mrs. Leavell signed in 1980 contained this provision:

> In order to effectuate the liquidation of the mortgages to which the Property is currently subject, each Party, for himself and his heirs and assigns, covenants and agrees that he will not institute or cause to be instituted any partition or division of the Property without the written consent of all other Parties or their heirs or assigns for a period of forty (40) years. This restriction against partition during the period aforesaid does not deprive any Party of his right to convey or transfer his interest in the Property to any other person or entity.[3]

The agreement also provided a detailed procedure whereby any of the parties could sell their interest in the ranch, whether that sale is to a third party or to a member of the family[4]. The significance of this provision is that the Leavells could have left the family arrangement at any time. Of course, the record bears out quite clearly that the ranch was worth more (at least to outsiders) as a single parcel than it was in the form of ownership opted for by Mrs. Leavell and the Linn brothers.

## DISCUSSION

In 1991 the Leavells filed a complaint seeking dissolution of the partnership known as the Linn Ranch Partnership and, eventually, a sale of the ranch or, in the alternative,

---

2. We think it prudent to note at this juncture that the Leavells' circumstances do not appear to improve in this regard, *i.e.,* the power to force the three brothers to agree to a homesite, merely because the agreement is transformed into a partnership. *See* 2 ALAN R. BROMBERG AND LARRY E. RIBSTEIN, *Partnership* § 6.03(c) (1994). This fundamental problem (requirement of a majority of the four siblings) was exacerbated by the Linns having regularly included all spouses, including Mr. Leavell, in the decision-making process.

3. Such an agreement is generally enforceable. No real contention is made in this appeal that the provision was not, on its face, enforceable. *See* Annotation, *Contractual provisions as affecting rights to judicial partition,* 37 A.L.R.3d 962 (1971); *Schultheis v. Schultheis,* 36 Wash.App. 588, 675 P.2d 634 (1984).

4. Indeed, as we have noted, *infra,* two of the six Linn children did sell their interests to the other four children.

a declaration that the non-partition provision of the *Co–Ownership Agreement* was null and void,[5] thus enabling an action for partition of the ranch to go forward. While it cannot be denied that the agreement in question has many of the characteristics which might also be found in a partnership agreement, on its face it is not a partnership agreement. It does not use the words "partner" or "partnership," and the record contains evidence that the parties specifically decided not to form a partnership. On the other hand, the parties routinely referred to themselves as partners and to their group as a partnership. For each year they owned the ranch, they filed a partnership tax return with the Internal Revenue Service. There was a considerable body of correspondence, minutes of meetings, etc., in which each of the co-owners used the term partner or partnership. Of course, the Leavells contend that the terms partner and partnership were used in a technical legal sense, and the brothers contend they were used in a much more informal sense ("associate, colleague" vs. "one joining in an enterprise with a view toward profit"). *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1648 (1986).

■ After a trial, the district court found that the agreement between the parties was not a partnership. The principal issue in this appeal is whether the district court erred in reaching that conclusion. The Leavells contend the district court did not employ the correct standard of review in reaching its decision. Our standard for review under circumstances such as these is at least partially set out in *Murphy v. Stevens,* 645 P.2d 82, 85 (Wyo.1982). *Murphy,* however, did not involve a circumstance where there was an agreement in writing. Therefore, our point of embarkation must be to look at the agreement itself, which the parties voluntarily executed. The district court could have readily inferred that the agreement, on its face, was not a partnership agreement. As noted above, neither "partner" nor "partnership" are used anywhere in the agreement. The Leavells appear to argue that any "expressed" intention in the agreement is *"wholly irrelevant"* to the

question of whether a partnership was formed. They cited no authority for that proposition and we have found none. Virtually all of the authorities relied upon by the Leavells, and the thrust of their argument, concern situations where the agreement is oral, or if in writing, ambiguous in its terms as to how the partnership is to be governed. *See Edler v. Rogers,* 817 P.2d 886 (Wyo. 1991); 4 AM.JUR. POF2d 355, *Status as partners, proof of partnership inter se* § 7 (1975). We agree that an expressed intention is not necessarily determinative, but clearly it is relevant to the question of what the parties intended. Indeed, a written partnership agreement is the best evidence of an intent to create a partnership relation. *Curtis v. Hanna,* 143 Kan. 186, 53 P.2d 795, 796 (1936); 4 AM.JUR. POF2d 355, § 3 (1975). Under most circumstances, however, even a written agreement may be subject to modification by a course of actual performance. *Rosen Trust v. Rosen,* 53 A.D.2d 342, 386 N.Y.S.2d 491, 499 (1976); and *see* UNIF. PARTNERSHIP ACT § 7, 6 U.L.A. 100 n. 96 (1969 & Supp.1994). Given the unambiguous expressions contained in the contract and the conflict in the testimony, we can only conclude that the district court's ultimate findings are clearly sustained by the evidence. Moreover, we are persuaded that, even if the agreement were construed to be a partnership agreement for the purposes of resolving *this* dispute, between *these* parties, then the terms of that agreement would still govern. That is, partition is waived for a period of forty years—unless the outstanding mortgage is paid—whether the agreement is taken at face value or deemed to be a partnership agreement.

■ The Leavells also ask that we reject the district court's finding that the agreement was "clearly and unambiguously" *not* a partnership agreement. We think very little more need be said than what we said above, *i.e.,* that the document relied upon by the Leavells does not purport to be a partnership agreement. *See, e.g.,* 14 AM.JUR. *Legal Forms* 2d 324, *Partnership* §§ 194:81–88 (1994). The Leavells' contentions in this regard are not aided by their insistence that

5. The Leavells do not pursue the alternative argument in this appeal.

the agreement clearly fits the definition of a partnership; "[A]n association of two (2) or more persons to carry on as co-owners a business for profit." WYO.STAT. § 17–13–201(a) (1989). Based on the totality of the evidence, the most obvious inference which might be drawn from the evidence by a fact finder is that the agreement entered into by this family was not one intended to be a business for profit. The principal function of their association was to preserve a family heritage and a unique way of life that had been rapidly disappearing from Teton County—the family ranch. To the extent there were "profits" (and if there were any at all, they were very minimal) they resulted from the fact that the principal mortgage was not being paid and that no family member was paid for any work done on the ranch, whether that work was general cleanup, bookkeeping, letter writing, management, etc. Likewise, no member of the family paid anything to the group for use of the property, and all family members made considerable use of it. To the extent the parties engaged in discussions about profits, and to the extent there was testimony about profits at trial, that term was used in the loosest sense. Virtually every witness joined into the confusion between the term "income" and the term "profit." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 1143, 1811 (1986). The idea of "profits" appears to have become more and more important only after the real estate market in Teton County transformed the ranch into a "gold mine." Thus, the district court might well have concluded that the association of these family members lacked an essential ingredient of a partnership. Also, the filing of partnership tax returns is significant evidence of the existence of a partnership, but it is only one factor to be weighed in the balance. *See Wilder v. Hobson,* 101 N.C.App. 199, 398 S.E.2d 625, 627 (1990).

■ The Leavells testified that a partnership was intended and the Linn brothers testified that no partnership was intended. The district court was the fact finder and, given the circumstances of this case, the rather onerous task assigned to it was to resolve the conflicts in the evidence. *Murphy,* 645 P.2d at 85. A specific factual finding will not be disturbed unless the finding is clearly erroneous or against the great weight of evidence. *Id.* The findings of the district court were not clearly erroneous or against the great weight of the evidence. Moreover, our conclusion in this regard is further bolstered when it is also considered that the Leavells' only goal, insofar as seeking to establish the existence of a partnership, was to dissolve that partnership and avoid the consequences of the agreement Mrs. Leavell had signed in 1980. As noted above, the Leavells had a convenient way out of the agreement, if they chose to leave. Rather than exercise their options under the agreement they sought to avoid even the most utterly unambiguous of its provisions. Under circumstances such as these, unless the intent is clearly proved, this court will not construe a family arrangement as a partnership. *See First Nat'l Bank of Eugene v. Williams,* 142 Or. 648, 20 P.2d 222, 226 (1933). Finally, we agree with the district court that the sentiments we expressed in *Quin Blair Enter., Inc. v. Julien Constr. Co.,* 597 P.2d 945, 951–52 (Wyo.1979), are applicable here. It is in just such circumstances of disagreement and disarray as those in which this family finds itself that it is especially important to read and strictly construe formal agreements.

■ In the second appeal, the Linn brothers contend the district court erred in finding they had suffered no damages as the result of this action and in not conducting a hearing concerning an award of attorney's fees.[6] From our review of the briefs and the record, there is no apparent basis upon which an award of attorney's fees could be premised. Therefore, we hold the district court did not err in this regard.

The judgment of the district court is affirmed in all respects.

---

6. The *Co-Ownership Agreement* between the parties does not have an attorney's fee provision and the Linns do not cite any statutory authorization for an award of attorney's fees for a breach of the *Co-Ownership Agreement.*