Diana NOLLEN, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 99–275.

Supreme Court of Wyoming.

Oct. 16, 2000.

Representing Appellant: Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; Diane E. Courselle, Director of the Defender Aid Program; and Dawnessa Shaw and Mark Scarr, Student Interns for the Defender Aid Program.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director of the Prosecution Assistance Program; and J. Craig Abraham and Vicki Kay Johnston, Student Interns for the Prosecution Assistance Program.

Before LEHMAN, C.J.; THOMAS, GOLDEN, and HILL, JJ.; and DAN SPANGLER, D.J. (RET.).

DAN SPANGLER, District Judge (Retired).

A jury convicted Appellant Diana Nollen of seven counts of forgery under Wyo.Stat.Ann. § 6-3-602(a)(ii) (LEXIS 1999). She was acquitted on another three counts of forgery. The trial court sentenced her to prison terms of not less than three years nor more than six years each, to be served concurrently. She appeals from that Judgment and Sentence.

We affirm.

## THE ISSUES

The appellant states these issues:

### ISSUE I

Was Diana Nollen convicted on seven counts of forgery without sufficient evidence that she was the person who used the unauthorized checks or that she had an intent to defraud?

### ISSUE II

Did the Prosecutor make impermissible remarks during closing argument vouching for the trustworthiness of [O]fficer John Shepherd's testimony?

## THE FACTS

In 1978 or 1979, Mark Harker opened a checking account with First Wyoming Bank in Rawlins. His printed checks showed his

address as Wamsutter, Wyoming, where he lived until 1983. First Wyoming Bank was purchased by Key Bank, which was purchased by Community First National Bank in July of 1997. Mr. Harker received new checks from the successor banks. By 1997, he had not used the First Wyoming Bank checks for a number of years.

From November 28, 1997, through December 2, 1997, ten checks were written on Mr. Harker's First Wyoming Bank checks and were issued to various businesses in Rawlins, purporting to have been signed by him. The checks were not in fact signed by him, and he had not authorized anyone to use the checks. He did not know the appellant. He had never worked for S.S.T. Drilling, which was written as his place of employment on one check. At the time of the offenses, he was living in Rock Springs.

The appellant was found not guilty as to the three checks issued on November 28, 1997. On November 29, 1997, at the Pamida store in Rawlins, the appellant approached the store manager and asked if the store would take her check. She showed the manager a checkbook containing checks which had been signed but were otherwise blank. The appellant stated that her boyfriend, Mark Harker, had given her the checkbook for shopping in Rawlins. The manager approved a $200 check issued by the appellant for merchandise. The transaction was recorded on the Pamida videotape, which was shown to the jury. The remaining six checks were issued that day and on each of the next three days.

On December 2, 1997, an unidentified woman drove to the drive-up window at Community First National Bank and presented a First Wyoming Bank deposit slip with two checks and another document. The bank computer did not recognize the account number on the deposit slip. The papers were returned to the woman. Later that day, she offered a Community First National Bank deposit slip with two checks. Those documents were retained by the bank and were introduced into evidence.

On December 29, 1997, Officer John Shepherd of the Baker City, Oregon, Police Department interviewed the appellant. She stated that she had forged a check or checks on the Rawlins account of Mr. Harker.

## SUFFICIENCY OF THE EVIDENCE

■ The standard for reviewing sufficiency of the evidence is as follows:

"The appellate test for sufficiency of evidence is whether a rational trier of fact could have been sufficiently armed by the evidence to find the essential elements of the offense beyond a reasonable doubt. In assessing that issue, we view the evidence in a light most favorable to the state, affording them the benefit of all reasonable inferences to be drawn therefrom. It is not our task, let alone our place, to reweigh the evidence or reexamine the credibility of the witnesses."

*Rodriguez v. State,* 962 P.2d 141, 148 (Wyo. 1998) (quoting *Curl v. State,* 898 P.2d 369, 375 (Wyo.1995) (citations omitted)).

■ The appellant argues that there was insufficient evidence to conclude she was the person who issued the seven checks for which she was convicted. Concerning the first check issued at Pamida, the appellant was identified by the store manager, and there was a videotape. The manager saw that the appellant had a checkbook containing a number of signed checks. The other six checks were issued that day and on each of the next three days. All checks were negotiated at businesses in Rawlins. The appellant confessed that she had written a check or checks.

The appellant does not cite any cases which have held similar evidence to be insufficient. A rational person could reasonably conclude that the appellant had written all seven checks. Thus, there was sufficient evidence of the appellant's identity to uphold the verdict.

■ The appellant also argues that there was not sufficient evidence to show she had the intent to defraud because someone attempted to deposit money into the account during the time the checks were issued. This argument falls short for a number of reasons. First, we do not know the identity of the person who attempted to make the

deposit. Without that, we know nothing of the appellant's intentions. Second, the amount of the attempted deposit was less than the total amount of the checks written on the account. In fact, we do not know if the checks to be deposited had any value. Third, regardless of the amount of the deposit, the bank had no authority from the owner of the account to pay checks which did not have his signature. Thus, the businesses that accepted the checks could not have been reimbursed. Finally, given the false representations that were made in negotiating these checks, the jury could reasonably have found that the appellant had intent to defraud, regardless of any later attempt to make amends.

## THE PROSECUTOR'S ARGUMENT

During the cross-examination of Officer Shepherd and over the state's objection, the defense counsel was allowed to ask about an investigation of the officer by the Oregon Department of Justice. Officer Shepherd testified that he had been investigated. On redirect examination, he testified that none of the allegations were substantiated and he had not been convicted of any crime involving perjury or false swearing.

■ In closing argument, the defense counsel questioned the officer's credibility. The prosecutor responded: "We heard again about John Shepherd's alleged perjury charges. They're unfounded. They were not substantiated. You have no charges in front of you showing that he is a perjurer or a liar. He took the stand. He said he would tell the truth and he did." The appellant claims that these comments require the conviction to be reversed because it is improper for the prosecutor to personally vouch for the credibility of the prosecution's witnesses. *Harper v. State*, 970 P.2d 400, 403 (Wyo. 1998).

■ Because the defense counsel did not object to the prosecutor's comments, our review is pursuant to the plain error standard:

First, the record must clearly present the incident alleged to be error. Second, appellant must demonstrate that a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable, way. Last, appellant must prove that he was denied a substantial right, resulting in material prejudice against him.

*CB v. State*, 749 P.2d 267, 268–69 (Wyo.1988).

There is no doubt as to what occurred at the trial. The issue is whether the appellant has demonstrated that there was an obvious violation of the law. We are not persuaded that we should depart from the reasoning in the *Harper* case:

The prosecutor was not personally vouching for the credibility of Harper's daughters and their friend. He argued only that the daughters and their friend testified truthfully on the witness stand as compared to not speaking truthfully when they were interrogated by Harper's investigator. At no point did the prosecutor *personally* vouch for the credibility of these witnesses. His argument simply was that they had testified truthfully in court. We perceive no impropriety on the part of the prosecutor in making these arguments, and certainly they did not reach the required level to constitute plain error.

*Harper*, 970 P.2d at 404. Similarly, in this case, the prosecutor was not personally vouching for the credibility of the officer. Instead, she was arguing that the attempted impeachment of the witness was not supported by the evidence and his testimony should, therefore, be accepted as the truth. There is nothing improper about that argument. Consequently, the appellant has not demonstrated that the prosecutor's remarks violated the law.

## CONCLUSION

We conclude that the evidence was sufficient for the jury to find that the appellant was the person who issued the checks and she did so with the intent to defraud. The appellant has not shown that there was an error of law committed in the closing argument of the prosecutor. Therefore, we affirm the Judgment and Sentence.