2002 WY 87

**In the Matter of Lawrence AVERY, d/o/b 09–18–28:**

**Lawrence Avery, Appellant (Defendant),**

v.

**The State of Wyoming, Appellee (Plaintiff).**

No. 01–104.

Supreme Court of Wyoming.

June 7, 2002.

Donald L. Painter, Casper, Wyoming, Representing Appellant.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Bryan A. Skoric, Senior Assistant Attorney General, Cheyenne, Wyoming, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] After pleading no contest, Lawrence Avery, the appellant, was convicted in 1985 of first-degree sexual assault and second-degree sexual assault, the victims being his step-grandchildren. He was sentenced to ninety days in a community alternatives program or forty-five days in jail, to be followed by two years of supervised probation. In September 2000, the State filed an Application for Hearing to Designate Risk of Re–Offense, pursuant to the Wyoming Sex Offender.Registration Act. In February 2001, the State filed an Amended Application for Hearing to Designate Risk of Re–Offense, in which several allegations were added as to recent behavior that suggested a high-risk classification was in order. The appellant appeals the district court's determination that he poses a high risk to re-offend. We find insufficient evidence to support the district court's order and we, therefore, reverse.

## ISSUE

[¶ 2] The appellant words the issue as follows:

> Whether, as a matter of law, there was sufficient evidence for the district court to enter an Order and Designation of High Risk of Re-offense.

The State posits the issue as follows:

> Did the State show that appellant posed a high risk of re-offense by a preponderance of the evidence?

## THE WYOMING SEX OFFENDER REGISTRATION ACT

[¶ 3] In 1994, this state adopted the Wyoming Sex Offender Registration Act (the Act). Wyo. Stat. Ann. § 7–19–301 (LexisNexis 2001) contains several rather complex definitions that are determinative of which offenders must register and for which crimes. Suffice it to say for purposes of this appeal that the appellant's 1985 convictions required him to register. He has not raised his duty to register as an issue in this appeal.

[¶ 4] In addition to registration, the Act provides for a process whereby certain sex offenders are to be classified as to their risk of re-offense. That process is found in Wyo. Stat. Ann. § 7–19–303 (LexisNexis 2001). The appellant does not contend that he should not be subject to this process. Rather, he contends that the evidence presented was insufficient for the district court to have classified him as high risk, when considered under the mandatory factors of Wyo. Stat. Ann. § 7–19–303(d):

In determining an offender's risk of reoffense under subsection (c) of this section, the court shall consider:

(i) Conditions of release that minimize risk of reoffense, including whether the offender is under supervision of probation or parole, receiving counseling, therapy or treatment, or residing in a home situation that provides guidance and supervision;

(ii) Physical conditions that minimize the risk of reoffense, including advanced age or debilitating illness;

(iii) Criminal history factors indicative of high risk of reoffense, including:

(A) Whether the offender's conduct was found to be characterized by repetitive and compulsive behavior;

(B) Whether the offender served the maximum term under the court order;

(C) Whether the offender committed the sexual offense against a child;

(D) Whether psychological or psychiatric profiles indicate a risk of recidivism;

(E) The offender's response to treatment;

(F) Recent behavior, including behavior while confined or while under supervision in the community as well as behavior in the community following service of sentence;

(G) Recent threats against persons or expressions of intent to commit additional crimes; and

(H) Other criminal history factors, including:

(I) The relationship between the offender and the victim;

(II) Whether the offense involved the use of a weapon, violence or infliction of serious bodily harm;

(III) The number, date and nature of prior offenses.

## STANDARD OF REVIEW

[¶ 5] On appeal, sufficiency of the evidence is analyzed by viewing the evidence in the light most favorable to the prevailing party and by affording to the prevailing party the benefit of all reasonable inferences that may be drawn from that evidence. *Nollen v. State,* 12 P.3d 682, 684 (Wyo.2000) (*quoting Rodriguez v. State,* 962 P.2d 141, 148 (Wyo.1998)). We do not reweigh the evidence or re-examine the credibility of the witnesses. *Nollen,* 12 P.3d at 684 (*quoting Rodriguez,* 962 P.2d at 148). Neither do we usually consider conflicting evidence presented by the non-prevailing party. *Williams v. State,* 986 P.2d 855, 857 (Wyo.1999). Where, however, as here, the fact finder was a judge, rather than a jury, our role is somewhat more expansive:

"The factual findings of a judge are not entitled to the limited review afforded a jury verdict. *Hopper v. All Pet Animal Clinic, Inc.,* 861 P.2d 531, 538 (Wyo.1993). While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. *Id.* Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail weighing disputed evidence. *Id.* Findings of fact will not be set aside

unless the findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id."* *Stroup v. Oedekoven,* 995 P.2d 125, 128 (Wyo. 1999) *(quoting Springer v. Blue Cross and Blue Shield of Wyoming,* 944 P.2d 1173, 1175–76 (Wyo.1997)). When supported by substantial evidence, a judge's factual findings will not be disturbed on appeal unless they are against the great weight of the evidence. *McNeiley v. Ayres Jewelry Co.,* 886 P.2d 595, 597 (Wyo.1994); *Leavell v. Linn,* 884 P.2d 1364, 1368 (Wyo.1994).

[¶ 6] Obviously, sufficiency of the evidence cannot be evaluated without knowing the standard against which the evidence is to be measured. That is problematic in the present situation because the Act neither assigns the burden of persuasion nor says what that burden is to be. That fact is exacerbated by the failure of the parties to provide any guidance to this Court on the issue. The appellant does not even address the burden of proof. The State's entire analysis is as follows:

> Appellant's hearing was a civil proceeding, not a criminal proceeding. The logical burden of proof which the State had to meet as the movant was showing by a preponderance of the evidence that Appellant posed a high risk of re-offense. Appellant has not argued for the application of a different burden of proof, and there is no logical basis for the application of a more rigorous standard in Appellant's hearing. The record shows that the State satisfied its burden of proving by a preponderance of the evidence that Appellant posed a high risk of re-offense.

[¶ 7] It is true that the Act is a regulatory device, not a method of imposing criminal

punishment. *Johnson v. State,* 922 P.2d 1384, 1387 (Wyo.1996); *Snyder v. State,* 912 P.2d 1127, 1130–31 (Wyo.1996). Consequently, it is not difficult to conclude that "beyond a reasonable doubt" is not the appropriate standard. That is not the same as saying, however, that "preponderance of the evidence" is the correct standard. Contrary to the State's observation, there may well be some logical basis for a more rigorous standard. It has been held that due process under the Fourteenth Amendment to the United States Constitution requires not only that the state carry the burden of persuasion at sexual offender classification hearings, but that it do so by clear and convincing evidence. *E.B. v. Verniero,* 119 F.3d 1077, 1106–11 (3rd Cir.1997), *cert. denied,* 522 U.S. 1109, 118 S.Ct. 1039, 140 L.Ed.2d 105, *cert. denied,* 522 U.S. 1110, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998). *See also* Jane A. Small, Note, *Who are the People in Your Neighborhood? Due Process, Public Protection, and Sex Offender Notification Laws,* 74 N.Y.U. L.Rev. 1451 (Nov.1999).[1]

[¶ 8] As mentioned above, this issue has not been briefed in the instant case. The appellant ignored the issue and the State assumed the burden of proof standard was "preponderance of the evidence." Because important constitutional and policy issues are involved, we do not intend to rule on the appropriate standard until such time as it is properly presented to us and adequately briefed. For purposes of the instant case only, we will follow the lead of the parties and consider the evidentiary issue as it has been presented; that is, as a question of the preponderance of the evidence.[2] By doing so, we are not making a determination that such is the proper standard to be applied under the Act.

## DISCUSSION

[¶ 9] Two witnesses testified at the hearing. The first, Lynn Cohee, is an in-

---

1. This approach utilizes a balancing test derived from *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), whereby the court considers four factors: (1) the private interest affected by the official action; (2) the risk of the erroneous deprivation of such interest through the procedures used; (3) the probable value of any alternative procedures; and (4) the government's interest.

2. A preponderance of the evidence is such evidence that leads the trier of fact to find that the existence of the contested fact is more probable than its non-existence. *In re Worker's Compensation Claim of Johnson,* 2001 WY 48, ¶ 9, 23 P.3d 32, 36 (Wyo.2001) *(quoting Scherling v. Kilgore,* 599 P.2d 1352, 1359 (Wyo.1979)).

vestigator in the Natrona County Sheriff's Office. Cohee's testimony can best be described as an unsuccessful attempt to "hearsay in" allegations of improper sexual contact between the appellant and three minors during the period from 1995 to 1999. No specific improper conduct by the appellant was established through Cohee's testimony, and the district court did not indicate that it relied on Cohee's testimony in any way in reaching its decision.

[¶ 10] The second witness to testify was the appellant. His testimony contained considerable information that may be seen as relevant to the statutory factors to be considered by the district court:

1. At the time of the hearing, the appellant was seventy-two years old.

2. At the time of the hearing, the appellant was not married and lived with no one.

3. The male victim was seven years old and the female victim was six years old at the time of the original offenses.

4. The appellant denied the original offenses, contrary to statements he allegedly made that were included in the presentence investigation report.

5. The appellant served the full forty-five days of his jail sentence.

6. The appellant obtained no counseling.

7. The appellant has never been diagnosed with a mental or psychological problem.

8. The appellant suffers from erectile dysfunction as a result of injuries received when a trailer fell on him, and he has not had an erection since that occurred, approximately in 1988.

9. The appellant's probation was never revoked.

10. The appellant denied the allegations of any recent improper sexual contact with minors.

11. The appellant has had aneurysm surgery, with frequent angioplasty procedures thereafter.

[¶ 11] At the end of the classification hearing, the district court announced its decision and the reasons for it. For ease of analysis, we quote the comments verbatim:

THE COURT: Very good. I find matters such as the one presented here most challenging. My view of this particular case is that the factors set forth by statute cut both ways. There's many things that can be argued going both ways in this situation.

The question to be determined is not whether there has been re-offense but whether there's a risk of re-offense, and in my mind the factors that are laid out here can be analyzed in a couple of different ways. For example, the factors whether there are conditions of release that minimize the risk of re-offense, whether the offender is under supervision or received counseling, therapy or treatment.

In that regard, Mr. Painter is correct that he's not under supervision, he's not receiving counseling at this time. But on the other hand, even though it may not have been his fault, it appears to me that if someone were convicted of first degree sexual assault and second degree sexual assault that maybe even if it wasn't mandated by the Court that the problem be addressed by counseling, therapy, treatment, by dealing with the underlying problem that created the offense in the first place. So I can see where you could argue a factor like that to cut both ways.

Focusing on the offense itself, which is the criminal history factors, I have very big concerns. We have two serious convictions for the most serious sex offenses under Wyoming law, sexual assault in the first degree, sexual assault in the second degree. We have offenses committed against very young minor children. We have offenses committed against a male and a female. We have offenses he's committed against grandchildren.

There was a concern I have about the testimony of Mr. Avery basically denying any offense in the first hand relative to offenses to which he stands convicted. The Court clearly had to have accepted a factual basis to accept his pleas of nolo contendere in the first instance and his denial of statements made in a pre-sen-

tence investigation which was adopted in the course of that criminal proceeding and documents his statement or his version of the offense substantially in my mind impeached his credibility in these proceedings.

So because of those primary factors, although I'm considering all of the factors, including clearly that his physical condition minimizes his risk for offense, I have to come down on the side of the State in this matter because of huge concerns I have in those areas I've identified.

I'm going to make a finding of a high risk for re-offense in this case and ask, Ms. Wilking, if you would, to prepare an order reflecting that ruling for Mr. Painter's approval as to form.

[¶ 12]  Essentially, the points made by the district court are (1) the appellant had not undergone counseling or other therapy; (2) first-degree sexual assault and second-degree sexual assault are the most serious sexual assault crimes under Wyoming law; (3) the victims were children, a male and a female, and they were the appellant's step-grandchildren; (4) the appellant denied committing the offenses despite contrary statements contained in the presentence investigation report, which denial casts doubt on the appellant's credibility; and (5) the appellant's physical condition minimized the risk.

[¶ 13]  The question now before this Court is whether these conclusions and the district court's decision to categorize the appellant as high risk are contrary to the great weight of the evidence. We conclude that such is the case. The evidence established that the appellant was a seventy-two-year-old man who, approximately sixteen years earlier, had been convicted of sexually assaulting his step-grandchildren. For some reason not explained in the record, he was allowed to plead no contest, and he served only forty-five days in jail.[3] He successfully completed two years of supervised probation. Most glaringly absent from the evidence was proof, as opposed to accusation, of recidivism during the sixteen years since the offenses. In addition, the appellant's physical condition at least raised a serious question as to the likelihood of re-offense or even the ability to re-offend.

[¶ 14]  Contrary to the district court's findings, the great weight of the evidence suggests that the appellant does not pose a high risk of re-offense. The State did not prove, for instance, that the appellant's conduct was "characterized by repetitive and compulsive behavior," or that there were any "psychological or psychiatric profiles [to] indicate a risk of recidivism," or that the appellant's recent behavior indicated a threat of re-offense, or that the appellant had made recent threats or expressions of intent to re-offend. Wyo. Stat. Ann. § 7–9–303(d)(iii)(A) and (D).

[¶ 15]  There will be cases such as this one, where newly registering offenders committed their crimes many years ago. If the statutory classification system is to have any integrity, the State must prove more than the mere commission of the original offense, especially where the offender has been out and about in society during the interim without further offense. The five points outlined by the district court in this case might carry greater weight in the case of a recent crime with a newly released offender. However, they cannot very well meet the State's burden where the offender has been in the community for sixteen years without proven recidivism.

[¶ 16]  We recognize that the risk classification scheme of the Act creates a dilemma for the district courts. The district court, without much information, is asked to predict the likely future conduct of an offender. If the district court "guesses" wrong, and someone who was assessed as low risk or moderate risk re-offends, the district court's judg-

---

**3.**  One reason the district court expressed concern about the appellant's credibility was that the appellant now denied the original crimes, despite the fact that the sentencing court "had to have accepted a factual basis to accept his plea of nolo contendere...." The record does not, however, establish that the appellant, himself, established a factual basis and, furthermore, the establishment of a factual basis by a defendant upon pleading nolo contendere is not required. *Peitsmeyer v. State*, 2001 WY 38, ¶ 7, 21 P.3d 733, 734 (Wyo.2001); *State v. Steele*, 620 P.2d 1026, 1028 (Wyo.1980).

ment may be called into question, not to mention the fact that there will be a new victim or victims. On the other hand, if the district court takes the safer route, and classifies all offenders as high risk, then the public warning feature of the system is rendered meaningless, and individual offenders are not treated fairly.

[¶ 17] The only way this statutory scheme will work is if the State is held to a burden of proof sufficient to allow the district court to distinguish one offender from another, utilizing the statutory factors. In the instant case, the great weight of the evidence simply did not justify placing the appellant in a high-risk category.

[¶ 18] We reverse and remand for a new classification hearing under the statute.

VOIGT, Justice, delivered the opinion of the Court; KITE, Justice, filed a dissenting opinion, with which HILL, Justice, joined.

KITE, Justice, dissenting, with whom HILL, Justice, joins.

[¶ 19] I respectfully dissent from the majority opinion. After stating the applicable standard of review, the majority proceeds to disregard the substantial evidence supporting the district court's findings and make its own determination without the benefit of observing the witnesses. The majority uses preponderance of the evidence as the standard of proof. This standard is met if the evidence leads the trier of fact to find that the existence of the contested fact is more probable than its nonexistence. *Parker Land and Cattle Company v. Wyoming Game and Fish Commission,* 845 P.2d 1040, 1078 (Wyo.1993). "The conclusion of what preponderates is with the trier of fact." *Id.; see also Curless v. Curless,* 708 P.2d 426, 429 (Wyo.1985).

> [I]t is important that the exercise of discretion be accompanied by the trial court's articulation of the factors considered and the weight accorded to them.... [A]rticulation of the reasons for the decision tends to provide a firm base for an appellate judgment that discretion was soundly exercised. It confines review of the exercise of discretion to its appropriate scope—i.e.,

whether the relevant factors were considered and given appropriate weight....

*United States v. Criden,* 648 F.2d 814, 819 (3d Cir.1981); *see also WJH v. State,* 2001 WY 54, ¶ 18, 24 P.3d 1147, ¶ 18 (Wyo.2001); *Pace v. Pace,* 2001 WY 43, ¶ 15, 22 P.3d 861, ¶ 15 (Wyo.2001). The district court concluded, based on all the evidence and consideration of the statutory factors, Mr. Avery presented a high risk of reoffense.

[¶ 20] If the record contains substantial evidence, we will not disturb a judge's factual findings on appeal unless they are against the great weight of the evidence. *McNeiley v. Ayres Jewelry Co.,* 886 P.2d 595, 597 (Wyo. 1994); *Leavell v. Linn,* 884 P.2d 1364, 1368 (Wyo.1994).

> Findings of fact will not be set aside unless the findings are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Springer v. Blue Cross and Blue Shield of Wyoming,* 944 P.2d 1173, 1176 (Wyo.1997) (citation omitted); *see also Stroup v. Oedekoven,* 995 P.2d 125, 128 (Wyo.1999). Although a different judgment may have been reached and the question the district court faced may have been a close one, the court's findings are not clearly erroneous. It cannot be reasonably concluded, based upon this record, that a mistake was made.

[¶ 21] Two factors cause me to disagree with the majority's decision to reverse the district court's order. First, the record indicates the court considered substantial evidence, the most persuasive of which may have been Mr. Avery's own testimony. Second, the court carefully explained how the statutory factors were considered and weighed. Nothing in the statute mandates one factor should be determinative of the outcome. Instead, the district court is directed to find the appropriate level of risk of reoffense based upon a review of all the factors, weighing them equally. The majority places undo emphasis on the lack of evidence of actual reoffense and Mr. Avery's physical condition, which, contrary to the inference of the majority, does not prevent him

from committing another sexual assault similar to those for which he was convicted.

[¶ 22] Evidence indicating a high risk of reoffense included the testimony of Lynn Cohee, an investigator for the Natrona County sheriff's office, and Mr. Avery and the record of the original offense. The nature of the original offense establishes several of the statutory factors. Mr. Avery was charged with and convicted of first-degree sexual assault and second-degree sexual assault of very young victims who were six and seven years old. Wyo. Stat. Ann. § 7–19–303(d)(iii)(C) (LexisNexis 2001). The children were Mr. Avery's step-grandchildren who were living with him at the time the crimes were committed. Wyo. Stat. Ann. § 7–19–303(d)(iii)(H)(I) (LexisNexis 2001). Mr. Avery pleaded no contest to the charges which constitutes an admission of all the essential elements of the charges. *Zanetti v. State*, 783 P.2d 134, 139 (Wyo.1989); *State v. Steele*, 620 P.2d 1026, 1028 (Wyo.1980).

[¶ 23] Significantly, at the hearing on the state's petition to designate Mr. Avery as high risk for reoffense, Mr. Avery was no longer subject to probation or parole; was not receiving any counseling, therapy, or treatment; and was not residing in a home situation that provided guidance and supervision. Wyo. Stat. Ann. § 7–19–303(d)(i) (LexisNexis 2001). Further, he refused to accept any responsibility for his conduct and denied ever having physical contact with his step-grandchildren. This denial directly contradicted his nolo contendere plea. His conviction required that he register his address with the sheriff's office and send a written notice of any change of address within ten days of establishing a new residence. Wyo. Stat. Ann. § 7–19–302(e) (LexisNexis 2001). Despite this, he admitted he had not been living at his registered address for over a year.

[¶ 24] Fundamental to a sexual offender's success in avoiding future offenses is acceptance of his problem and commitment to seek help. Mr. Avery's testimony showed neither. His blatant refusal to even admit the prior offense occurred and failure to comply with the registration requirements provided ample foundation for the district court's conclu-

sion he was not credible and its belief Mr. Avery presented a high risk for reoffense.

[¶ 25] The majority dismisses Ms. Cohee's testimony as an attempt to "hearsay in" evidence concerning improper conduct by Mr. Avery with other minors since his conviction. While it is true that the alleged victims did not testify, Ms. Cohee testified she received a complaint against Mr. Avery in 1996 regarding allegations of sexual intercourse with two minors. She also testified to receiving a complaint in 1999 in which a ten-year-old girl claimed Mr. Avery performed oral sex with her. Ms. Cohee offered the results of a lie detector test administered on Mr. Avery as a result of those complaints, and Mr. Avery successfully objected to its admission into evidence. Ms. Cohee also testified regarding Mr. Avery's repeated denials of any wrongdoing during her interview with him. The record contains no explanation why the complaints did not result in formal charges. While certainly not proof beyond a reasonable doubt of repetitive behavior or recent threats, which are additional statutory factors to consider, this evidence demonstrated allegations of improper sexual contact with minors continued to be an aspect of Mr. Avery's life. Since this was not a criminal proceeding but, as noted by the majority, was a regulatory one subject to the more lenient standard of proof of preponderance of the evidence, Ms. Cohee's testimony could certainly have substantiated the district court's belief, when considered together with the other evidence, that Mr. Avery presented a high risk of reoffense.

[¶ 26] The primary factor upon which Mr. Avery relied to demonstrate a low risk of reoffense was an injury he incurred which apparently caused him to be unable to achieve an erection. Wyo. Stat. Ann. § 7–19–303(d)(ii) (LexisNexis 2001) directs the court to consider "[p]hysical conditions that minimize the risk of reoffense, including advanced age or debilitating illness." Neither Mr. Avery nor the majority provides an explanation, and none logically exists, how an inability to achieve an erection reduces the risk a sexual offender will reoffend through other means including fondling and oral sex. Mr. Avery and the majority also suggest that

his age of seventy-two years and his aneurysm surgery somehow militate against the risk of reoffense. While advanced age and poor health may weigh in favor of a lower risk, those factors alone do not mandate such a conclusion.

[¶ 27] The majority effectively requires district courts to find a reoffense or a more recent conviction before a sexual offender can be designated as high risk. The legislature did not see fit to require such a finding to justify a high risk designation, and this court should refrain from allowing its apparent disagreement with the district court's factual finding to rationalize creation of a requirement not provided by the statute.