2006 WY 41

**In the Matter of JJF, Appellant, (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**In the Matter of CNS, Appellant, (Defendant),**

v.

**The State of Wyoming, Appellee (Plaintiff).**

**Nos. 05–91, C–05–10.**

Supreme Court of Wyoming.

April 6, 2006.

---

Tom Sedar and Kimberly A. Corey of Law Office of Tom Sedar, P.C., Casper, Wyoming, for Appellants. Argument by Mr. Sedar.

Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and H. Michael Bennett, Assistant

Attorney General, for Appellees. Argument by Mr. Bennett.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1] In consolidated cases, two registered sex offenders challenge the constitutionality of a statute requiring the State to prove their risk of reoffense by a preponderance of the evidence, arguing instead that the State's evidence must be clear and convincing. One appellant also challenges the sufficiency of the evidence.

[¶ 2] We affirm.[1]

## ISSUES

[¶ 3] 1. Whether the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, §§ 2, 6, and 7 of the Wyoming Constitution require the standard of proof at a risk-of-reoffense hearing to be clear and convincing evidence?

2. Whether there was sufficient evidence in No. C–05–10 for the district court to determine that CNS posed a moderate threat of reoffense?

## FACTS

[¶ 4] In 1989, JJF pled guilty to aggravated assault, kidnapping, and first-degree sexual assault. In 2005, the Natrona County District Court heard the State's application for a risk-of-reoffense assessment, and designated JJF's risk of reoffense as being moderate. In doing so, the court applied the burden of proof standard of a preponderance of the evidence.

[¶ 5] In 1998, the second appellant, CNS, was convicted in Nevada of statutory sexual seduction, for having sexual intercourse with a person under the age of sixteen years. His five-year probationary sentence was subsequently revoked for a drug offense, and he served out the balance of his sentence in prison. In 2004, the Natrona County District Court was asked by the State to determine CNS's risk of reoffense. After a hearing, but without stating the standard of proof being applied, the court found that CNS posed a moderate risk of reoffense.

## STATUTES

[¶ 6] The Wyoming Sex Offender Registration Act is found at Wyo. Stat. Ann. § 7–19–301 *et seq.* (LexisNexis 2005). In addition to its registration feature, the Act provides for a risk-of-reoffense hearing process. At the time of the hearings in these consolidated cases, that part of the Act read as follows:

(c) The division shall provide notification of registration under this act, including all registration information, to the district attorney of the county where the registered offender is residing at the time of registration or to which the offender moves. Upon receipt of notification, the district attorney shall file an application for hearing under this subsection if the offender is an aggravated sex offender or a recidivist. For other offenders registered under this act, the district attorney shall file an application for hearing under this section if, based upon a review of the risk of reoffense factors specified in W.S. 7–19–303(d), it appears that public protection requires notification be provided to persons in addition to those authorized to receive criminal history record information under W.S. 7–19–106. Upon application of the district attorney, and following notice to the offender and an in-camera hearing, the district court shall, based upon its finding as to the risk of reoffense by the offender, authorize the county sheriff, police chief or their designee to release information regarding an offender who has been convicted of an offense that requires registration under this act, as follows:

(i) If the risk of reoffense is low, notification shall be in accordance with the requirements of W.S. 7–19–106 to persons authorized to receive criminal histo-

---

1. These cases were treated as confidential in this Court because the statutes provide for different levels of notice to the public for different risk assessments. Affirmance of the district court negates the reason for confidentiality, and such need not be preserved hereafter, except as may be required by Wyo. Stat. Ann. § 7–19–303 (LexisNexis 2005).

ry record information under W.S. 7–19–106;

(ii) If the risk of reoffense is moderate, notification shall be provided to residential neighbors within at least seven hundred fifty (750) feet of the offender's residence, organizations in the community, including schools, religious and youth organizations, as well as to the persons authorized under paragraph (i) of this subsection, through means specified in the court's order;

(iii) If the risk of reoffense is high, notification shall be provided to the public through a public registry and through any additional means specified in the court's order, as well as to the persons and entities required by paragraphs (i) and (ii) of this subsection. The division shall make the public registry available to the public through electronic internet technology and shall include:

(A) The offender's name, including any aliases;

(B) Physical address;

(C) Date and place of birth;

(D) Date and place of conviction;

(E) Crime for which convicted;

(F) Photograph;

(G) Physical characteristics including race, sex, height, weight, eye and hair color.

(d) In determining an offender's risk of reoffense under subsection (c) of this section, the court shall consider:

(i) Conditions of release that minimize risk of reoffense, including whether the offender is under supervision of probation or parole, receiving counseling, therapy or treatment, or residing in a home situation that provides guidance and supervision;

(ii) Physical conditions that minimize the risk of reoffense, including advanced age or debilitating illness;

(iii) Criminal history factors indicative of high risk of reoffense, including:

(A) Whether the offender's conduct was found to be characterized by repetitive and compulsive behavior;

(B) Whether the offender served the maximum term under the court order;

(C) Whether the offender committed the sexual offense against a child;

(D) Whether psychological or psychiatric profiles indicate a risk of recidivism;

(E) The offender's response to treatment;

(F) Recent behavior, including behavior while confined or while under supervision in the community as well as behavior in the community following service of sentence;

(G) Recent threats against persons or expressions of intent to commit additional crimes; and

(H) Other criminal history factors, including:

(I) The relationship between the offender and the victim;

(II) Whether the offense involved the use of a weapon, violence or infliction of serious bodily harm;

(III) The number, date and nature of prior offenses.

Wyo. Stat. Ann. § 7–19–303 (LexisNexis 2003). This section was amended in 2005 to specify that, in assessing the statutory factors, the court is to apply a preponderance of the evidence standard. *See* Wyo. Stat. Ann. § 7–19–303(c) (LexisNexis 2005). That does not change the issue before this Court, but makes more pointed the outcome.

**DISCUSSION**

*Constitutionality*

[¶ 7] We have previously determined that the registration aspect of the Act does not violate due process. *Snyder v. State,* 912 P.2d 1127, 1132 (Wyo.1996). In *Avery v. State,* 2002 WY 87, ¶¶ 6–8, 47 P.3d 973, 976 (Wyo.2002), we recognized the specific issue now before us, but did not address it because it was not adequately presented. While we will now take on that task in regard to the United States Constitution, we will not proceed with a separate state constitutional analysis, inasmuch as the appellants, while mentioning the state constitution, have not

done so, either. *See Vassar v. State*, 2004 WY 125, ¶ 14, 99 P.3d 987, 993 (Wyo.2004).

[¶ 8] The question that has been presented is not formulated as a question of legislative intent—what burden of proof did the legislature intend to be applied by the district court at risk-of-reoffense hearings? Rather, the question that has been presented is formulated purely in terms of constitutionality—whether due process of law requires the standard of proof to be clear and convincing evidence. That question is a question of law, so it is reviewed *de novo* by this court. *Joyner v. State*, 2002 WY 174, ¶ 7, 58 P.3d 331, 334 (Wyo.2002); *Boyce v. Freeman*, 2002 WY 20, ¶ 9, 39 P.3d 1062, 1064 (Wyo.2002).

[¶ 9] We will first contrast the two standards of proof at issue. "A 'preponderance of the evidence' is defined as 'proof which leads the trier of fact to find that the existence of the contested fact is more probable than its non-existence.' " *Thornberg v. State ex rel. Wyo. Workers' Compensation Div.*, 913 P.2d 863, 866 (Wyo.1996), *as modified on denial of reh'g* (April 29, 1996) (quoting *Scherling v. Kilgore*, 599 P.2d 1352, 1359 (Wyo.1979)). "Clear and convincing evidence," on the other hand, is defined as " 'that kind of proof which would persuade a trier of fact that the truth of the contention is highly probable.' " *TF v. Dep't of Family Serv.*, 2005 WY 118, ¶ 11, 120 P.3d 992, 999 (Wyo.2005) (quoting *Hutchins v. Payless Auto Sales, Inc.*, 2002 WY 8, ¶ 19, 38 P.3d 1057, 1063 (Wyo.2002)).

[¶ 10] Succinctly stated, the contention of the appellants is that clear and convincing evidence is required in determining the risk of reoffense because the appellants' interests, and the risk of erroneous deprivation of those interests, outweigh any government interest. That formulation of the issue is based upon the four-part balancing test identified in *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976): (1) the private interest affected by the official action; (2) the risk of the erroneous deprivation of such interest through the procedures used; (3) the probable value of any alternative procedures; and (4) the government's interest.

[¶ 11] The appellants identify their affected interests as being privacy and liberty. Quoting *Doe v. AG*, 426 Mass. 136, 686 N.E.2d 1007, 1016 (1997) (Fried, J., concurring), they argue that the requirement to register is a "continuing, intrusive, and humiliating regulation" of the individual. Further, they contend that public notification of sex offender status "puts the registrant's livelihood, domestic tranquility, and personal relationships with all around him in grave jeopardy." *E.B. v. Verniero*, 119 F.3d 1077, 1107 (3d Cir.1997), *cert. denied*, 522 U.S. 1109, 1110, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998). *See also Espindola v. State*, 855 So.2d 1281, 1288 n. 19 (Fla.Dist.Ct.App.3d Dist.2003) (ability to seek employment and housing), *rev'd sub nom. Milks v. State*, 894 So.2d 924 (Fla.2005), *cert. denied*, — U.S. —, 126 S.Ct. 368, 163 L.Ed.2d 86 (2005).

[¶ 12] The appellants compare risk of reoffense hearings to those situations where due process has been found to require clear and convincing evidence because the "loss threatened by [the] particular type of proceeding is sufficiently grave to warrant a more than average certainty on the part of the factfinder . . . ." *Santosky v. Kramer*, 455 U.S. 745, 758, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982) (termination of parental rights). *See also Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979) (civil commitment); *Woodby v. Immigration & Naturalization Service*, 385 U.S. 276, 285–86, 87 S.Ct. 483, 487–88, 17 L.Ed.2d 362 (1966) (deportation); *Chaunt v. United States*, 364 U.S. 350, 353, 81 S.Ct. 147, 149, 5 L.Ed.2d 120 (1960) (denaturalization); *TOC v. TND*, 2002 WY 76, ¶ 11, 46 P.3d 863, 868 (Wyo.2002) (adoption without consent); *Painter v. Abels*, 998 P.2d 931, 941 (Wyo.2000) (right to earn a living); and *In re Matter of GP*, 679 P.2d 976, 1005 (Wyo.1984) (termination of parental rights).

[¶ 13] In particular, the appellants point to *Commonwealth v. Maldonado*, 576 Pa. 101, 838 A.2d 710 (2003), which involved a hearing under that state's sexual offender registration statute. After stating that the fundamental requirement of due process is the opportunity to be heard in a meaningful manner, the *Maldonado* court declared that

the phrase "meaningful manner" includes the concept of reasonableness, leading to the question of "whether a reasonable manner must subsume a requirement of proof beyond a reasonable doubt as to the issue of the individual's status as a sexually violent predator as defined by statute." *Id.* at 714. In answering that question, the court provided the following analysis of the reasons for differing standards of proof:

Briefly, the function of a standard of proof is to instruct the factfinder as to the level of confidence that society believes he should have in the correctness of his conclusion; furthermore, different standards of proof reflect differences in how society believes the risk of error should be distributed as between the litigants. Thus, the most stringent standard—beyond a reasonable doubt—is applicable in criminal trials due to the gravity of the private interests affected; these interests lead to a societal judgment that, given the severe loss that occurs when an individual is erroneously convicted of a crime, the public should bear virtually the entire risk of error. The preponderance-of-the-evidence standard, by contrast, reflects a belief that the two sides should share the risk equally; for this reason, it is applicable in a civil dispute over money damages, where the parties may share an intense interest in the outcome, but the public's interest in the result is "minimal." *Addington,* 441 U.S. at 423, 99 S.Ct. at 1808; [*Commonwealth v.*] *Williams,* 557 Pa. [285], at 306, 733 A.2d [593,] at 604 [(1999)]. The "clear and convincing" standard falls between those two end-points of the spectrum. . . .

*Id.* at 715.

[¶ 14] Before we review the holding in *Maldonado,* we need to clarify the issue facing the Pennsylvania court. The question was not whether the clear and convincing standard was the minimally acceptable constitutional test in these cases—meaning that the preponderance of the evidence standard is constitutionally unacceptable. Rather, the question was whether due process requires proof beyond a reasonable doubt in sexual offender registration and classification sys-

tems. That issue was engendered by the legislature specifying that the standard of proof was clear and convincing evidence. Despite that difference in facts, *Maldonado* is instructive. First, the court concluded that the restrictions imposed by the statute are more substantial than the loss of money typifying a common civil action. Second, these substantial restrictions, coupled with the public interest in protecting citizens from sexual crimes, mean that society has a significant interest in the accuracy of the classification process. Third, requiring proof beyond a reasonable doubt would be too burdensome on the State because of the nature of psychological evidence. And fourth, these laws are regulatory, rather than punitive, and the reasonable doubt standard should not be exported beyond the criminal law. *Id.* at 715–18. The court summarized its conclusions as follows:

In summary, then, although an individual adjudicated as a sexually violent predator may suffer a substantial imposition upon his liberty interests, the harm to the public of erroneous exclusion of a sexually violent predator, combined with the difficulty of satisfying the reasonable-doubt standard in the context of resolving the types of medical and psychiatric issues involved, satisfy us that the intermediate evidentiary standard chosen by the Legislature is consistent with due process guarantees. This conclusion, moreover, is in accord with the reported decisions of other jurisdictions. *See, e.g., Verniero,* 119 F.3d at 1111; *Doe v. Pataki,* 3 F.Supp.2d 456, 472 (S.D.N.Y.1998); *In re Avery,* 47 P.3d 973, 976 (Wyo.2002); *cf. Doe v. Sex Offender Registry Bd.,* [428 Mass. 90,] 697 N.E.2d [512,] at 520 [(1998)] (finding that the preponderance-of-the-evidence standard satisfies due process as long as it is combined with a requirement that the fact finder "make detailed findings to demonstrate that close attention has been given to the evidence").

*Id.* at 718 (footnote omitted).[2]

[¶ 15] *Verniero,* one of the cases cited by the Pennsylvania court, is also the case refer-ed earlier herein, the present issue was not di-

---

**2.** The reference to *Avery* is questionable. As not-

enced by this Court in *Avery* in noting that some jurisdictions have found the clear and convincing evidence standard constitutionally mandated in sexual offender classifications. *Avery*, 2002 WY 87, ¶ 7, 47 P.3d at 976. After assessing the relative interests of the State and the registrant, the *Verniero* court concluded as follows:

> We must, therefore, ask whether the preponderance of evidence standard, which "allocates the risk of error nearly equally" between an erroneous overestimation or underestimation of a registrant's future dangerousness, "reflect[s] properly the [ ] relative severity" of these erroneous outcomes. [*Santosky*, 455 U.S.] at 766, 102 S.Ct. at 1401. *Addington* supplies the answer. Because "the possible injury to the individual [registrant] is significantly greater than any possible harm to the state," the registrant, consistent with due process, cannot "be asked to share equally with society the risk of error." 441 U.S. at 427, 99 S.Ct. at 1809. It necessarily follows that the Due Process Clause requires that the state prove its case by clear and convincing evidence. . . .

*Verniero*, 119 F.3d at 1111.

[¶ 16] In *Doe v. Pataki*, 3 F.Supp.2d 456, 469–72 (S.D.N.Y.1998), the court admittedly had difficulty balancing the factors under the *Mathews v. Eldridge* test because both the private interests and the government interests are significant, because the nature of the proof makes it highly susceptible to error, and because registration and classification affect every aspect of the offender's life. The court concluded that these proceedings being somewhat less than full-blown criminal proceedings, and somewhat more than mere civil proceedings, the intermediate standard of proof—clear and convincing evidence— was required. *Id.*

[¶ 17] *Doe v. Pataki* should be contrasted with *Doe v. Sex Offender Registry Bd.*, 428 Mass. 90, 697 N.E.2d 512 (1998), which case also was cited by the *Maldonado* court as requiring a heightened standard of proof in these cases. Unlike the New York court, the

Massachusetts court downplayed the private interests of the registrant, found any risk of misclassification minimized by the fact that both parties would produce evidence at an evidentiary hearing, and found that a heightened standard would be inconsistent with promoting the State's interest in protecting the public. The court concluded, therefore, that:

> The offenders in these cases do not face a potential loss of liberty, nor is the stigma of being required to register as a sex offender and of having information regarding sex offenses disseminated to the public, sufficient to require a higher standard of proof than that generally required in civil proceedings. However, the fact finder must make particularized, specific, and detailed findings, guided by the factors set forth in [the statute], to demonstrate that close attention has been given to the evidence as to each offender and that the classification for each is appropriate.

*Doe*, 697 N.E.2d at 519.

[¶ 18] The State counters these arguments by contending that due process requires the clear and convincing evidence standard of proof only in proceedings resulting in such a significant deprivation of liberty or social stigma that it must be said to amount to additional punishment for a criminal conviction. Interestingly enough, the State relies upon many of the same cases cited by the appellants, including *Santosky*, *Addington*, *Woodby*, and *Chaunt*. It is the State's position that classification of sexual offenders simply does not rise to the level of intrusion seen in these cases, such intrusion having been characterized as " 'condemned to suffer grievous loss.' " *Santosky*, 455 U.S. at 758, 102 S.Ct. at 1397 (quoting *Goldberg v. Kelly*, 397 U.S. 254, 263, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970)).

[¶ 19] In *Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), *cert. denied*, 543 U.S. 817, 125 S.Ct. 56, 160 L.Ed.2d 25 (2004), the United States Supreme Court upheld the constitutionality of the Alaska Sex Offender Registration Act against an *ex post*

---

rectly raised in *Avery*, but the State alluded to preponderance of the evidence being the correct standard. In noting the issue, we simply com-

mented that there was authority to the contrary. *Avery*, 2002 WY 87, ¶ 7, 47 P.3d at 976.

*facto* challenge. In doing so, the Court determined that the Act established a legitimate, non-punitive regulatory scheme that rationally advanced its public safety purpose. *Id.* at 102–03, 123 S.Ct. at 1152. The Court observed that public access to the registry was necessary to fulfill its function, and that the purpose of such access was not to punish the offender. Further, the Court found that the embarrassment that may result from public access is but a collateral consequence of the legitimate regulation. *Id.* at 98–99, 123 S.Ct. at 1150. The Court then rejected as mere conjecture the argument that dissemination of registry information violates the offender's liberty and privacy rights by infringing upon his ability to obtain employment and housing. Finally, the Court concluded that the dissemination of factually accurate information merely provides the public with a more efficient means of taking precautionary steps in dealing with registrants. *Id.* at 100–01, 123 S.Ct. at 1151. *See also Doe v. Moore,* 410 F.3d 1337, 1345 (11th Cir.2005) (publication of truthful information already available to the public does not infringe upon liberty and privacy interests), *cert. denied,* —— U.S. ——, 126 S.Ct. 624, 163 L.Ed.2d 506 (2005).

[¶ 20] The *Smith* court also concluded that Alaska's Act did not have a severe impact upon the personal liberties of registrants. The Court noted that the Act imposed no physical restraint, and left registrants free, for instance, to change jobs and residences. *Smith,* 538 U.S. at 100, 123 S.Ct. at 1151. Unlike probationers and parolees, sexual offender registrants do not have to ask the State's permission to make such changes. *Smith,* 538 U.S. at 101, 123 S.Ct. at 1152.

[¶ 21] In assessing the privacy and liberty interests of registrants, the United States Supreme Court has stated that mere injury to reputation does not constitute infringement, much less deprivation, of such interests. *Conn. Dep't of Pub. Safety v. Doe,* 538 U.S. 1, 6–7, 123 S.Ct. 1160, 1164, 155 L.Ed.2d 98 (2003). Moreover, a registration require-

ment based upon mere fact of prior conviction, unlike a classification scheme based upon the finding of an additional fact—future dangerousness—does not even implicate the procedural due process requirement of an opportunity to be heard; the fact simply is not material under such a statute. *Id.* at 4, 123 S.Ct. at 1163.[3]

[¶ 22] It is difficult to identify a general rule as to the "correct" burden of proof under a sexual offender registration statute, both because statutes differ so much from jurisdiction to jurisdiction, and because the questions raised in the reported cases vary so much one from the other. For instance, where the question was civil commitment of a person found to be a sexually violent predator, rather than mere registration and notification after completion of a criminal sentence, the New Jersey Supreme Court concluded that the State bore the burden of proving the statutory status by clear and convincing evidence. *In re Commitment of W.Z.,* 173 N.J. 109, 801 A.2d 205, 218 (2002). The *ratio decidendi* of the decision came from *Addington,* cited earlier herein and relied upon by the appellants:

> "[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323, 330–31 (1979). In an involuntary commitment proceeding an individual's interest in his or her liberty is balanced against well-recognized state interests. A state's legitimate interests and authority in this area arise from two sources: its police power to protect the community at large, and its *parens patriae* power to provide care to its citizens who are unable to care for themselves because of their emotional disorders. *Id.* at 426, 99 S.Ct. at 1809, 60 L.Ed.2d at 331; *In re D.C.,* 146 N.J. 31, 47–48, 679 A.2d 634 (1996); *In re S.L.,* 94 N.J. 128, 136, 462 A.2d 1252 (1983). However, because of the significant restraint on the liberty of a committee, the commitment process is bounded by constitutional procedural guar-

---

**3.** Because the issue was not before it, the Court declined to decide whether such a statutory scheme violates substantive due process.

antees and the scope of commitment is limited. *Id.* at 137–38, 462 A.2d 1252.

*Id.* at 214. *See also In re Det. of Petersen*, 145 Wash.2d 789, 42 P.3d 952, 955–58 (2002) (State bears burden of proof at sexually violent predator commitment proceeding and annual review hearings).

[¶ 23] More pertinent to the specific question now before the court—whether the due process clause of the federal constitution requires clear and convincing evidence for the government to classify sexual offenders as to the likelihood of reoffending—are those cases dealing with that limited question. There is not unanimity, and the United States Supreme Court has not answered the question. Relying upon *Verniero*, cited above, the New Jersey Supreme Court applied the clear and convincing evidence standard in finding that the State had failed to prove penetration, a statutory factor that had been used in classifying the appellant as a moderate risk. In Ohio, clear and convincing evidence is the statutory standard of proof. *State v. Anderson*, 135 Ohio App.3d 759, 735 N.E.2d 909, 910 (1999); *State v. Ward*, 130 Ohio App.3d 551, 720 N.E.2d 603, 616 (1999). The same is true in Pennsylvania. *See Maldonado*, 838 A.2d at 718.

[¶ 24] Two 2004 cases exemplify the opposite view; that is, the view that the question of a defendant's risk of reoffense status is subject only to a preponderance of the evidence standard. In *State v. Guidry*, 105 Hawai'i 222, 96 P.3d 242, 254 (2004), that state's supreme court concluded a lengthy state and federal due process analysis of the need for a hearing because of the lifetime requirements placed upon registrants by stating simply that "[a]t such a hearing, the State shall have the burden of proving, by a preponderance of the evidence, that the sex offender is required to continue to register. . . ." The court in *In re W.M.*, 851 A.2d 431, 434–455 (D.C.2004), *cert. denied*, 543 U.S. 1062, 125 S.Ct. 885, 160 L.Ed.2d 792 (2005) went through a similarly thorough due process analysis, including application of the *Mathews* balancing test, in finding that the State necessarily had the burden of proving all predicate facts necessary to classify sexu-

al offenders as to the risk of reoffending, and then reached the following conclusion:

> We do not agree that due process requires the government to meet that burden by more than a preponderance of the evidence, however. The Due Process Clause may mandate heightened standards of proof—clear and convincing evidence, or even proof beyond a reasonable doubt— when fundamental rights or liberty interests are at stake and the risk of error should be allocated disproportionately to one side (the state), or perhaps when other special factors are present. *See, e.g., Santosky v. Kramer*, 455 U.S. 745, 761, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (termination of parental rights); *Addington v. Texas*, 441 U.S. 418, 427, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (civil commitment). This is not such a case. Appellants' asserted liberty interests are not fundamental ones, and given the government's compelling interest in protecting the public from sex offenses committed by recidivists, it should not bear a disproportionate share of the risk of error. If "preponderance of the evidence" is the appropriate standard for establishing both substantive and technical violations of probation, as we have held, *see Johnson v. United States*, 763 A.2d 707, 712 (D.C.2000), it is the appropriate standard here.

*Id.* at 455.

[¶ 25] We agree with these last sentiments. Wyoming's statutes, like others nationwide, are regulatory rather than punitive in purpose. *Snyder*, 912 P.2d at 1131. They exist to protect the public from repeat sexual offenders, who are more likely than other types of offenders to reoffend. *Conn. Dep't of Pub. Safety*, 538 U.S. at 4, 123 S.Ct. at 1163; *McKune v. Lile*, 536 U.S. 24, 32–33, 122 S.Ct. 2017, 2024, 153 L.Ed.2d 47 (2002). It is our perception that the exercise of the police power directly to protect the citizenry in this fashion is a reasonable exercise of fundamental governmental authority. We simply do not believe that the possible injury to a sexual offender from erroneous classification is " 'significantly greater than any possible harm to the state.' " *Verniero*, 119 F.3d at 1111 (quoting *Addington*, 441 U.S. at

427, 99 S.Ct. at 1810). The "possible injury" to the registrant is that he will be classified as a higher risk than what he actually is, with the attendant statutory consequences. The "possible harm" to the State is a new sexual assault victim, with the attendant shattered life.

[¶ 26] This is a balancing process in which we find the government's interest to be very high, and the private interest of the registrant to be not so high—in particular, not so high as the fundamental interest involved in the parent-child relationship, or the fundamental interest in not being civilly committed, or the fundamental interest in not being deported. Clearly, the sexual offender does not stand on equal footing with the unconvicted as far as his right to be left alone by the government is concerned. The nature of his crime has heightened society's interest in protecting itself from him.

[¶ 27] "Statutes are presumed to be constitutional, with any doubts in that regard resolved in favor of constitutionality, and with the statute's challenger bearing the burden of showing unconstitutionality beyond any reasonable doubt." *Hede v. Gilstrap,* 2005 WY 24, ¶ 6, 107 P.3d 158, 163 (Wyo. 2005). The due process challenge in the instant case simply does not accomplish that task. As just stated, we are not convinced that the government's interests are outweighed by the sexual offender's interests. In addition, the appellants have failed to make a compelling argument as to the remaining *Mathews* factors. As to the risk of erroneous classification, for example, the appellants' entire argument in their briefs is as follows:

Wyo. Stat. Ann. § 7–19–303 is a reflection of other states' Megan Laws. The analysis the district courts are to use when determining the risk of reoffense is also a reflection of other state laws. However, this is not to say that the laws were based upon any scientific probability that the individual will recidivate. The legislature placed in the hands of the courts the role of psychologists, psychiatrists, sociologists, and psychics.

This is a statute based upon the speculation that an individual may commit a crime in the future based upon a previous action or actions. This is not to say that an individual will commit a crime, but the individual's liberty interests are at stake based entirely on this speculation. An individual will be held up to public scrutiny for a minimum of ten (10) years. There is a high risk of erroneous deprivation of such a liberty interest through the procedure used. At a minimum the courts should be required to base their analysis on clear and convincing evidence.

[¶ 28] This argument ignores the fact that, in classifying sexual offenders as to risk of reoffense, the district court must apply the factors set forth in Wyo. Stat. Ann. § 7–19–303(d). At the very least, an appellant who alleges that the statute is unconstitutional because it allows for classification based upon speculation must attempt to show that there is *no relationship* between these factors and recidivism. The presumption of constitutionality cannot be overcome with speculation about speculation. Similarly, the appellants make no effort to establish the efficacy of any alternative procedures, that being the final *Mathews* factor.

### Sufficiency of the Evidence

[¶ 29] Our standard for reviewing the sufficiency of the evidence to sustain the factual findings and legal conclusions of a judge after a bench trial are well known and need not be repeated here. That standard, in the very context now before the Court, can be found at *In re Avery,* 2002 WY 87, ¶ 5, 47 P.3d at 975–76. Obviously, evidence is relevant and material if it tends to prove or disprove any of the factors found in Wyo. Stat. Ann. § 7–19–303(d), which factors were set forth earlier herein. The weight to be given to the evidence is up to the trier of fact, and the statute does not suggest what weight to give to what factor.

[¶ 30] We begin our review by noting that the district court in the CNS case clearly recognized its duty to apply, and did apply, the statutory factors. Rather than paraphrase the district court's analysis, we will set it out verbatim:

I'll note some of those factors, but I did consider all of them. They included that the offender is not currently under any supervision of Probation and Parole. He's not currently receiving any counseling, therapy, or treatment for sex offense concerns; but he is currently receiving some counseling in the form of NA. His current home situation as I see it based upon the evidence is stable and provides some guidance and supervision.

I don't think there are any physical conditions currently that he has that minimize the risk of reoffense. I don't hear anything really as to advanced age or debilitating illnesses that indicate a physical condition minimizing risk of reoffense.

Under the criminal history factors indicative of high risk of reoffense, once again, these factors cut several ways. I would agree with [defense counsel], I don't think the offender's conduct can be characterized as repetitive or compulsive. There may have been some compulsive nature to the underlying offense, but I don't see that as being a large factor in this matter.

In this case, the offender has served the maximum term of his court-ordered sentence. I do note that that was after having his probation revoked. The offense was against a child, and in this case, a 15–year–old female.

The psychological and psychiatric profiles are interesting, and I would say there could be several factors that cut several different ways. But I have to in this case accept Dr. Brown's evaluation that [CNS] was, under the psychiatric profile that he did, rated exceptionally low for reoffense. I must also note, however, that that was several years ago and that there are some challenges to the background information upon which that psychiatric profile was rendered. But I was also impressed with Dr. Brown's testimony and with his evaluation process.

It appears that there was perhaps some response to treatment, at least on the alcohol side. Under the section of recent behavior, it includes behavior while confined or under supervision. It says in the community. I do note that while under proba-

tion and under supervision, he violated his probation and that there was drug use during that period of time; but I also note that there is unrefuted testimony for at least the more recent past, [CNS] has not been violating the law and has not been using controlled substances or alcohol. And those would be factors and items of evidence relative to his behavior in the community following service of sentence.

There are no recent threats against persons or expressions of intent to commit additional crime.

Under the other criminal history factors, there was no relationship between the offender and the victim. There was no involvement of weapons, violence, or infliction of serious bodily harm. But there are a number of other misdemeanor offenses and probation difficulties that were noted in the criminal history or background.

So once again, as I say, [there] were factors that cut several ways. In this case, the Court makes a finding that there has been a showing of a moderate risk of reoffense given the totality of all the evidence and the factors, and I would ask [the State] to prepare an order reflecting that Court finding if you would.

[¶ 31] This is not a case where the State failed to produce evidence probative of the statutory factors. The transcript of the classification hearing is 77 pages in length, with 53 pages of testimony. The just-quoted statement by the district court was its application of the statutory factors to that testimony. So long as sufficient evidence was presented that supports the district court's findings and conclusions, it is not our job to re-weigh that evidence or to second-guess the district court.

[¶ 32] We will briefly identify some of the evidence relied upon by the district court. CNS was convicted of having sexual intercourse with a fifteen-year-old girl, to whom he had supplied alcohol. His probationary sentence was revoked due to a subsequent cocaine offense, and he served the balance of his penitentiary term. He had received counseling for his drug and alcohol problems, but only a minimal amount, if any, of sexual offender treatment. While the psy-

chological profile of CNS suggested a low risk of reoffense, according to his expert witness, that profile may have been based upon a less-than-complete history that CNS provided. In particular, there were several misdemeanor arrests, convictions, and probation violations, most of which, like the underlying sexual assault, involved the use of alcohol or drugs. CNS was not, at the time of the hearing, under any form of supervision, nor was he receiving any counseling besides periodic NA attendance. CNS was living in a home with his fiancée and her twelve-year-old son, the latter of whom was visited frequently by a twelve-year-old girlfriend. And finally, neither advanced age nor physical infirmity rendered CNS incapable of reoffending.

[¶ 33] We cannot say that, in the face of this evidence, it was unreasonable for the district court to classify CNS as a moderate risk of reoffense. It should be remembered that the district court was not asked to determine whether, by a preponderance of the evidence, it is more probable than not that CNS will reoffend. Rather, the district court was asked to determine whether it was more probable than not that CNS should be classified as a moderate risk. We could characterize the three risk classifications— low, moderate, and high—as follows: The offender likely will not reoffend (low), the offender might reoffend (moderate), and the offender likely will reoffend (high). The quantum of evidence necessary to convince a district judge to classify a sexual offender as a moderate risk of reoffense is not very high. All that is necessary for a finding of moderate risk is that the State produce enough evidence to distinguish a particular offender from those considered to be low risk. That is to be done, as it was here, by evidence probative of the statutory factors.

## CONCLUSION

[¶ 34] The Wyoming Sex Offender Registration Act does not violate the due process clause of the federal constitution. It is a legitimate regulatory device, with the primary goal of protecting the public. The governmental interest outweighs the offender's rights to privacy and liberty, and it is appropriate that the risk of classification error be borne equally by the State and the offender. The statutory scheme provides the offender with notice and a right to be heard, with both sides participating in the evidentiary hearing. A heightened standard of proof, such as clear and convincing evidence, would unnecessarily restrict the State's ability to protect the public, and the offender's somewhat limited rights are adequately protected by a requirement that the State prove any classification by a preponderance of the evidence.

[¶ 35] In Case No. C–05–10, there was sufficient evidence from which the district court could conclude that CNS posed a moderate risk of reoffending.

[¶ 36] We affirm in both cases.