NOT DESIGNATED FOR PUBLICATION

No. 119,328

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TYLER LEE FORD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed July 19, 2019. Affirmed.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., GREEN and POWELL, JJ.

PER CURIAM: Tyler Lee Ford appeals the district court's order requiring that he register as a violent offender under the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 et seq., after his conviction for robbery. Ford makes several constitutional arguments, all of which are raised for the first time on appeal. First, Ford contends the district court violated his due process rights when it required him to register as a violent offender without notice or an opportunity to be heard. Second, Ford claims KORA unconstitutionally violates offenders' due process rights by failing to establish the State's burden of proof or a process by which to contest the district court's factual findings creating a duty to register. And third, Ford alleges the district court unlawfully

1

increased his punishment based on improper judicial fact-finding in violation of his constitutional rights as recognized in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). After carefully considering Ford's arguments, we are unpersuaded by them and affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

On October 11, 2017, Ford robbed a convenience store. Ford entered the convenience store, pointed a handgun at the store clerk, and demanded money. The store clerk gave Ford about $132, which included a marked $2 bill. After receiving information concerning Ford's involvement with the robbery, officers obtained a warrant to search Ford's residence. While searching Ford's residence, officers found a loaded handgun and the marked $2 bill.

Ford was arrested and subsequently charged with aggravated robbery while armed with a dangerous weapon. As part of a plea agreement with the State, Ford waived his preliminary hearing and pled guilty to an amended charge of simple robbery, a severity level 5 person felony. The amended complaint did not state that Ford used a gun or another deadly weapon during the commission of the robbery. When giving the factual basis for the plea, the State explained that Ford pointed a black semiautomatic handgun at the store clerk and demanded money. The State also noted that officers located a .22-caliber black Ruger handgun with a loaded magazine in Ford's residence. The district court determined a factual basis existed for the plea and found Ford guilty of robbery. The district court did not inform Ford of his duty to register.

Prior to sentencing, a presentence investigation (PSI) report revealed that Ford's criminal history included four convictions of automotive burglary and a conviction of aggravated battery. The PSI also indicated that a special sentencing rule applied because Ford's crime of conviction was a "person felony committed with a firearm." When a

2

firearm is used to commit a person felony, the sentence is presumptive imprisonment. K.S.A. 2018 Supp. 21-6804(h). The PSI noted that offender registration was required under K.S.A. 2018 Supp. 22-4902. Ford filed a motion for a departure from his presumed sentence.

At sentencing, the State opposed the departure motion, arguing Ford had committed armed robbery and pointed a gun at the clerk's head. The district court denied Ford's departure motion, reasoning: "Not only was this an armed robbery of a Kwik Shop with a gun used, and *the court will make the finding of a weapon*, you had just got out of prison." (Emphasis added.) The district court sentenced Ford to 57 months in prison with 24 months of postrelease supervision. Again, the district court did not mention registration.

Subsequent to sentencing, a disagreement arose concerning whether the journal entry should reflect that Ford must register as a violent offender because the crime was committed with a deadly weapon. At the hearing to resolve the journal entry, the State argued registration was required because the case involved an armed robbery and the district court "made a specific finding that a dangerous weapon had been involved." Ford's counsel responded: "What I have in my notes, judge, is that the court said the words [']that a gun was used in the commission of the crime,['] but there was no finding that it was a dangerous weapon and there was no finding that it was a registration order."

The district court determined that Ford must register as a violent offender, stating:

> "The court specifically found a firearm was used in the commission of the offense. That requires registration. . . .
>
> " . . . [I]f there's any question whether a gun or a firearm is a dangerous weapon I will say that it is. And under Kansas law registration is required and it's the responsibility of the Department of Corrections to see that that is done."

3

The district court filed a journal entry which required Ford to register as a violent offender under KORA for 15 years after his release from prison because he committed a person felony with a deadly weapon.

Ford timely appeals.

I.     DID THE DISTRICT COURT VIOLATE FORD'S DUE PROCESS RIGHTS BY REQUIRING HIM TO REGISTER AS A VIOLENT OFFENDER?

Ford complains his due process rights were violated when the district court required him to register as a violent offender because he "had no notice nor meaningful opportunity to be heard on the court's discretionary finding that he register as a violent offender for 15 years for his conviction of robbery, which does not have a weapon as an element of the crime."

   A.     *Should we consider this issue raised for the first time on appeal*?

Ford acknowledges that he raises this due process claim for the first time on appeal. Generally, an issue not raised before the district court—even a constitutional claim—may not be raised for the first time on appeal. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018).

> "There are three exceptions to this rule:  (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the district court is right for the wrong reason." *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

Ford correctly argues that we may address the issue for the first time on appeal because such consideration is necessary to serve the ends of justice and prevent the denial

4

of fundamental rights. See *State v. Ibarra*, 307 Kan. 431, 432, 411 P.3d 318 (2018); *State v. Carter*, 55 Kan. App. 2d 511, 519-20, 419 P.3d 55 (2018), *rev. granted* 309 Kan. ___ (January 11, 2019).

Under the Fourteenth Amendment to the United States Constitutions, no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In *Carter*, the defendant challenged the district court's finding that she used a deadly weapon when committing a crime and, thus, qualified as a violent offender under KORA. Although Carter raised this argument for the first time on appeal, a panel of this court considered her argument "because it presents only an issue of law and because consideration of it is necessary to serve the ends of justice." 55 Kan. App. 2d at 520. Like in *Carter*, consideration of Ford's due process claim is necessary to serve the ends of justice. Therefore, we will consider it.

Whether a defendant's right to due process was violated is a question of law over which we exercise unlimited review. *State v. Hayes*, 307 Kan. 537, 538, 411 P.3d 1225 (2018). When reviewing a due process claim, we first determine whether a protected liberty or property interest is involved. If so, we must then determine the nature and extent of the process that is due. *Village Villa v. Kansas Health Policy Authority*, 296 Kan. 315, 331, 291 P.3d 1056 (2013). Due process is flexible in that not all situations calling for procedural safeguards call for the same kind of procedure. See *In re Care & Treatment of Ellison*, 305 Kan. 519, 526, 385 P.3d 15 (2016). A due process violation exists only if the claimant is able to show that he or she was denied "'a specific procedural protection to which he or she was entitled.'" *In re K.E.*, 294 Kan. 17, 22, 272 P.3d 28 (2012).

B. *Was Ford given notice and a meaningful opportunity to be heard*?

Accepting at face value Ford's claim that KORA's registration requirements impinge on his protected liberty and property interests, Ford fails to show how the district court denied him a specific procedural protection to which he is entitled.

The basic elements of procedural due process are notice and "the opportunity to be heard at a meaningful time and in a meaningful manner." *Ellison*, 305 Kan. at 526. "To satisfy due process, notice must be reasonably calculated, under all of the circumstances, to apprise the interested parties of the pendency of an action and to afford the parties an opportunity to present any objections. *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314-15, 70 S. Ct. 652, 94 L. Ed. 865 (1950)." *Johnson v. Brooks Plumbing*, 281 Kan. 1212, 1215, 135 P.3d 1203 (2006).

An individual defined by KORA as a violent offender must register under the Act. *State v. Marinelli*, 307 Kan. 768, 774, 415 P.3d 405 (2018). A violent offender includes any person convicted of a person felony after July 1, 2006, when "the court makes a finding on the record that a deadly weapon was used in the commission of such person felony." K.S.A. 2018 Supp. 22-4902(e)(2). And, generally, an offender must register for 15 years if the offender is convicted of a person felony and "the court makes a finding on the record that a deadly weapon was used in the commission of such person felony." K.S.A. 2018 Supp. 22-4906(a)(1)(N).

At Ford's plea hearing, the State provided a factual basis for the plea and explained that Ford used a gun in the commission of the crime. Ford never objected to the State's factual basis. Given the factual basis that a gun (which we agree is a deadly weapon) was used by Ford to commit the robbery, Ford was put on notice at this point that he could be subject to a registration requirement. See *State v. Smith-Parker*, 301 Kan. 132, 154, 340 P.3d 485 (2014) ("A gun is unquestionably a deadly weapon."); Black's Law Dictionary

6

1909 (11th ed. 2019) (term "deadly weapon" includes "[a]ny firearm or other device . . . calculated or likely to produce death"). But Ford argues the district court improperly failed to inform him about his registration obligations at the plea hearing as required by KORA. See K.S.A. 2018 Supp. 22-4904(a)(1)(A). However, this failure does not affect Ford's violent offender status or otherwise excuse his registration obligations. See 307 Kan. at 790-91.

According to our Supreme Court, "[n]o provision in KORA creates a consequence for the [district court's] failure to inform a defendant [of his or her duty to register] at the appropriate time. . . . [T]he Act itself imposes the duty to register upon [the defendant], rather than the court's order." 307 Kan. at 790. The purposes of the notice requirement are ensuring offenders know their registration obligations and preventing lack of knowledge from being raised as a defense to a later charge of failing to register. 307 Kan. at 790. But "neither the fact of notice or its timing are dispositive to whether a person is an 'offender' and, therefore, subject to registration requirements." 307 Kan. at 791. As a result, the district court's failure to satisfy K.S.A. 2018 Supp. 22-4904(a)(1)(A) does not entitle Ford to any relief at this stage of the proceedings. See *State v. Wren*, No. 118,046, 2018 WL 3077193, at *2 (Kan. App. 2018) (unpublished opinion).

According to the record, notice was provided to Ford in multiple ways. First, in addition to the notice provided by the factual basis at the plea hearing, the PSI prepared prior to sentencing put Ford specifically on notice that he was subject to a registration requirement. The PSI specifically stated that a special sentencing rule applied because Ford had committed a person felony with a firearm and that registration was required. Second, during sentencing, the district court found that Ford used a gun in the commission of the robbery, a person felony, and specifically noted that "the court will make the finding of a weapon." Ford did not object to this finding, nor did Ford object to the PSI. Although the district court did not use the words "deadly" or "dangerous" from the bench, it noted a gun was used and made the specific "finding of a weapon." Third,

7

the completed sentencing journal entry indicated that Ford had committed the crime of conviction with a deadly weapon. In the journal entry, the district court checked a box labeled "Yes" next to the question asking whether the offender committed the current crime with a deadly weapon. As a result of this finding, an offender registration supplement was attached to the journal entry, showing Ford's duty to register as a violent offender for 15 years because he was convicted "of a person felony with court finding on the record that such felony was committed with a DEADLY WEAPON." Our Supreme Court has found such findings made in the sentencing journal entry to be sufficient to require registration. *Marinelli*, 307 Kan. at 788-89.

Ford was also given the opportunity to be heard. As we have already noted, after sentencing the State and Ford disputed whether the journal entry should include a registration requirement. At a special hearing to resolve the journal entry, Ford was given the opportunity to argue that, although the district court found a gun was used, "there was no finding that it was a dangerous weapon and there was no finding that it was a registration order." In response, the district court then clarified that the gun was a dangerous weapon that was used in the commission of the offense. Ford did not object to this finding nor did he ask the court to reconsider its ruling.

We conclude the district court properly found on the record that Ford used a deadly weapon, and it did not violate Ford's due process rights when it required him to register as a violent offender.

II.    DOES KORA VIOLATE OFFENDERS' DUE PROCESS RIGHTS?

Ford next contends that KORA is unconstitutional on its face because (1) the Act fails to specify the burden of proof required to find that an offender used a deadly weapon when committing a person felony and (2) the Act does not give offenders an opportunity

8

to contest the district court's exercise of a discretionary finding. Ford asserts these failures violate defendants' procedural due process rights.

Again, Ford acknowledges he did not challenge the constitutionality of KORA before the district court. But Kansas courts have considered the constitutionality of KORA for the first time on appeal to serve the ends of justice and prevent the denial of fundamental rights. See *State v. Watkins*, No. 110,702, 2014 WL 4231269, at *1 (Kan. App. 2014) (unpublished opinion), *aff'd* 306 Kan. 1093, 401 P.3d 607 (2017).

Determining a statute's constitutionality is a question of law subject to unlimited review. "'We presume statutes are constitutional and must resolve all doubts in favor of a statute's validity.'" *State v. Petersen-Beard*, 304 Kan. 192, 194, 377 P.3d 1127, *cert. denied* 137 S. Ct. 226 (2016). Our duty is to interpret a statute in a way that makes it constitutional if there is any reasonable construction that would maintain the Legislature's apparent intent. *State v. Gonzalez*, 307 Kan. 575, 579, 412 P.3d 968 (2018).

As stated above, the basic elements of procedural due process are notice and "the opportunity to be heard at a meaningful time and in a meaningful manner." *Ellison*, 305 Kan. at 526. When determining what due process protections are required, we examine three factors:

> "(1) the private interest affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens the additional or substitute procedural requirements would entail." *In re Care & Treatment of Ontiberos*, 295 Kan. 10, 22, 287 P.3d 855 (2012).

Ford first argues that due process requires a district court to find *beyond a reasonable doubt* that a defendant used a deadly weapon when determining whether that

9

defendant is a violent offender under K.S.A. 2018 Supp. 22-4902(e)(2). Because K.S.A. 2018 Supp. 22-4902(e)(2) contains no explicit standard of proof, Ford claims the statute is unconstitutional. Second, Ford asserts that KORA violates his right to due process by providing no opportunity to contest the district court's exercise of the discretionary finding that he used a deadly weapon.

A.      *Does KORA fail to specify the burden of proof*?

Typically, statutes that fail to specify a particular standard of proof implicitly contain a preponderance of evidence standard. See *State v. Spain*, 263 Kan. 708, 714, 953 P.2d 1004 (1998). In recent Kansas Supreme Court opinions addressing K.S.A. 22-4902(e)(2), the court mentioned no burden of proof attached to the district court's finding that the defendant used a deadly weapon. See, e.g., *Marinelli*, 307 Kan. at 788-89.

The failure of K.S.A. 2018 Supp. 22-4902(e)(2) to mention a burden of proof suggests a preponderance of evidence standard. This conclusion is further supported by the Legislature's inclusion of a beyond reasonable doubt standard in subsection (c)(18) of K.S.A. 2018 Supp. 22-4902, which provides that a sex offender includes a person convicted of a crime involving "any act which has been determined beyond a reasonable doubt to have been sexually motivated." If we were to presume that proof beyond a reasonable doubt is required on all the district court's findings under K.S.A. 2018 Supp. 22-4902, then the language in K.S.A. 2018 Supp. 22-4902(c)(18) specifying the beyond reasonable doubt standard would become superfluous. See *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 626, 413 P.3d 432 (2018) ("We generally presume 'the legislature does not intend to enact useless or meaningless legislation.'"). As a result, we conclude that the Legislature intended for the district court to use a preponderance of the evidence standard when determining whether a defendant used a deadly weapon under K.S.A. 2018 Supp. 22-4902(e)(2).

A preponderance of the evidence standard does not violate due process in this context because the function of a standard of proof is to instruct the fact-finder to the level of confidence that society expects for the particular decision. The different standards of proof reflect the differences in how society believes the risk of error should be distributed between the parties. See *In re B.D.-Y.*, 286 Kan. 686, 696, 187 P.3d 594 (2008).

The most stringent burden of proof—beyond a reasonable doubt—applies to criminal trials due to the gravity of the private interests affected. 286 Kan. at 691. Given the magnitude of the private interests wrongly lost when a criminal defendant is erroneously convicted of a crime, "society imposes almost the entire risk of error upon itself." *Addington v. Texas*, 441 U.S. 418, 424, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979). As a result, due process requires the State to prove the guilt of an accused beyond a reasonable doubt on each element of the crime charged. See *State v. Ta*, 296 Kan. 230, 236, 290 P.3d 652 (2012). By contrast, the preponderance of the evidence standard reflects a belief that parties should share the risk of error equally. *Addington*, 441 U.S. at 423.

A preponderance of the evidence standard is presumptively applicable to civil actions unless "'particularly important individual interests or rights are at stake.'" *Nauheim v. City of Topeka*, 309 Kan. 145, 152, 432 P.3d 647 (2019). Cases involving termination of parental rights and civil commitment are examples of actions that implicate individual interests so fundamental or important that due process requires a higher standard of proof than preponderance of the evidence. See *Santosky v. Kramer*, 455 U.S. 745, 768, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) (termination of parental rights); *Addington*, 441 U.S. at 431 (civil commitment); K.S.A. 2018 Supp. 38-2269(a) (clear and convincing standard of proof applies to all termination of parental rights cases); K.S.A. 2018 Supp. 59-2966 (clear and convincing standard of proof required for civil commitment of mentally ill).

However, the private interests affected by KORA registration are outweighed by the government's interests in public safety. More specifically, the risk of erroneously depriving defendants of their private interests by using a preponderance of the evidence standard in a deadly weapon finding is relatively low. KORA registration affects offenders' private interests by imposing reporting requirements and requiring them to pay registration fees. However, the registration requirements do not burden Ford's fundamental right to privacy. See *State v. Adams*, No. 114,276, 2016 WL 4499520, at *3 (Kan. App. 2016) (unpublished opinion); also see *In re W.M.*, 851 A.2d 431, 450-51 (D.C. 2004) (finding District of Columbia Sex Offender Registration Act infringes on no fundamental liberty interests). And as other states have recognized, offender registration requirements do not implicate interests as fundamental or important as those which trigger a heightened standard of proof. See *In re W.M.*, 851 A.2d at 455; *J.J.F. v. State*, 132 P.3d 170, 178-79 (Wyo. 2006).

In requiring states to use at least a clear and convincing evidence standard when terminating parental rights, the United States Supreme Court noted a magnified risk of erroneous fact-finding because the proceedings "employ imprecise substantive standards that leave determinations unusually open to the subjective values of the judge." *Santosky*, 455 U.S. at 762. The Court also noted that termination proceedings are frequently vulnerable to cultural or class bias because they involve parents who are often poor, uneducated, and members of minority groups, and the State's ability to present its case through experienced attorneys, medical experts, and involved agency caseworkers dwarfs the parents' ability to mount a defense. 455 U.S. at 763.

Conversely, whether a defendant used a deadly weapon is an objective, black-and-white standard not particularly susceptible to subjective values or biases of a judge. And concerns about disparities in litigation resources are not as prevalent in a deadly weapon finding as they are in a finding of parental unfitness. Using a preponderance of the

12

evidence standard in a deadly weapon finding does not create an undue risk of an erroneous deprivation of private interests.

Weighing against a defendant's lesser private interests is the government's considerable interest in protecting the public. The purpose of KORA is to protect the public from designated offenders whom the Legislature has concluded are likely to reoffend. *State v. Wilkinson*, 269 Kan. 603, 609, 9 P.3d 1 (2000). Unlike other proceedings requiring a heightened standard of proof, the possible injury to a defendant from an erroneous classification as a violent offender under K.S.A. 2018 Supp. 22-4902(e)(2) is not "significantly greater than any possible harm to the state." *Addington*, 441 U.S. at 427. Although KORA registration affects an offender's private interests, the impacted interests are not as fundamental or important as the interests involved in the parent-child relationship or civil commitment. And given the government's compelling interest in protecting the public from violent offenses committed by recidivists, the State is not constitutionally required to bear a disproportionate share of the risk of error.

Due process does not require a district court to find beyond a reasonable doubt that a defendant used a deadly weapon when determining whether that defendant is a violent offender under K.S.A. 2018 Supp. 22-4902(e)(2).

B.      *Does KORA fail to provide an opportunity to contest a discretionary finding*?

Ford next claims KORA violates due process because the Act "does not give defendants a path or an opportunity to contest the court's exercise of a discretionary finding in K.S.A. 22-4902(e)(2)."

As Ford argues, K.S.A. 2018 Supp. 22-4902(e)(2) "does not affirmatively require the district court to consider and determine whether [the defendant] used a deadly

13

weapon in the commission of [his or] her offense." See *State v. Thomas*, 307 Kan. 733, 750, 415 P.3d 430 (2018). But Ford fails to explain why due process requires KORA to outline a process for defendants to oppose the district court's exercise of its discretion to consider whether a deadly weapon was used.

Registration requirements under KORA are not part of an offender's criminal sentence. *Thomas*, 307 Kan. at 750. Instead, an offender's duty to register "springs into existence by operation of law immediately upon the existence of statutorily prescribed conditions." 307 Kan. at 750. Relevant to Ford's case, the obligation to register sprang into existence when two statutorily prescribed conditions existed: (1) his person felony conviction and (2) the district court's factual finding on the record that a deadly weapon was used in the commission of the crime.

The Kansas Supreme Court has rejected arguments that KORA requires additional procedural protections beyond those required to convict the defendant of the underlying offense and those necessary to deem the defendant an offender. In *Wilkinson*, the defendant pled no contest to incest and was ordered to register as a sex offender because the district court found beyond a reasonable doubt that the crime was sexually motivated. On appeal, Wilkinson argued this procedure violated his due process rights because KORA did not afford him a hearing to determine the degree of threat he posed to the public before requiring him to register. Our Supreme Court rejected Wilkinson's argument and held:

> "[T]he only procedural due process to which Wilkinson was entitled was the process required to convict him of the underlying offenses . . . and the due process necessary to certify his offenses as sexually violent crimes within the terms of the Act . . . . Assuming no constitutionally deficient procedure in arriving at the conviction and in certifying it as a sexually violent offense under the terms of the Act (neither of which is asserted), there is no risk that the lack of a hearing would lead to an erroneous application of the Act's mandatory requirements. [Citation omitted.]" 269 Kan. at 614.

14

The only procedural due process to which Ford was entitled was the process required to convict him of the underlying offense and the due process necessary to deem him a violent offender under KORA. Ford was considered a violent offender after the district court found that he used a deadly weapon in the commission of the crime. And like the requested preregistration hearing in *Wilkinson*, there is no risk that a defendant's lack of opportunity to contest the district court's exercise of its discretionary consideration would lead to an erroneous application of KORA's mandatory requirements. KORA does not violate defendants' due process rights by failing to include a specific process for a defendant to contest the district court's exercise of the discretionary finding that he or she used a deadly weapon.

In sum, KORA does not violate offenders' due process rights by failing to provide a burden of proof or failing to outline a process to contest a discretionary finding under K.S.A. 2018 Supp. 22-4902(e)(2). Accordingly, Ford fails to show that KORA is unconstitutional.

III.    DID THE DISTRICT COURT VIOLATE FORD'S CONSTITUTIONAL RIGHTS?

Finally, Ford contends the district court violated his constitutional rights as described in *Apprendi* when the judge—rather than a jury—determined that he used a deadly weapon in the commission of his crime, thus prompting the requirement that he register as a violent offender under KORA.

Ford failed to raise his *Apprendi* argument before the district court. However, Ford asserts we should consider his *Apprendi* claim for the first time on appeal to prevent the denial of a fundamental right. Ford correctly notes that our appellate courts have routinely addressed *Apprendi* issues raised for the first time on appeal to prevent the denial of a fundamental right. See *State v. Unrein*, 47 Kan. App. 2d 366, 369, 274 P.3d 691 (2012), *rev. denied* 297 Kan. 1256 (2013).

"'Whether a defendant's constitutional rights as described under *Apprendi* were violated by a district court . . . raises a question of law subject to unlimited review.'" *State v. Huey*, 306 Kan. 1005, 1009, 339 P.3d 211 (2017), *cert. denied* 138 S. Ct. 2673 (2018). Any fact necessary to increase the punishment for an offense other than a prior conviction must be established by a guilty plea or proved beyond a reasonable doubt to a jury. *Apprendi*, 530 U.S. at 490. But under *Apprendi*, only facts that increase the penalty, or punishment, for a crime need to be submitted to a jury. 530 U.S. at 490. In contrast, "[t]he legislature intended KORA to be civil and nonpunitive for all classes of offenders currently subject to its provisions." *Huey*, 306 Kan. at 1009. In fact, our Supreme Court has repeatedly rejected the argument that offender registration under KORA is punishment. See, e.g., *Watkins*, 306 Kan. at 1095; *Huey*, 306 Kan. at 1009-10; *Petersen-Beard*, 304 Kan. at 209.

In *Huey*, the Kansas Supreme Court reviewed procedural facts and arguments identical to Ford's arguments here. Huey claimed the district court's deadly weapon finding and resulting registration order violated his constitutional rights under *Apprendi*. However, Huey brought his claim for the first time on appeal, so he had not presented facts to the district court attempting to show that the registration's effects on him were punitive. The Kansas Supreme Court found that because the Kansas Legislature intended KORA to be a civil regulatory scheme—not punishment—a defendant must present "the clearest proof" that registration was punitive before the court would consider registration a criminal penalty and that Huey had not shown, as he must, that his registration requirements constituted punishment. 306 Kan. at 1010. "Because the registration requirements did not increase Huey's punishment . . . , it was not necessary that Huey's use of a deadly weapon be found beyond a reasonable doubt by a jury." 306 Kan. at 1010.

Like Huey, Ford did not raise an *Apprendi* claim before the district court and has provided no fact-based record for this court to evaluate KORA's alleged punitive effects

on him or any other violent offender. Thus, Ford has not shown that his registration requirements as a violent offender are punishment.

While Ford asserts *Huey* was wrongly decided, "[t]his court is duty bound to follow Kansas Supreme Court precedent absent some indication that the court is departing from its previous position." *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). Because the registration order did not increase Ford's punishment, it was unnecessary that Ford's use of a deadly weapon be found beyond a reasonable doubt by a jury. Ford's duty to register as a violent offender under KORA did not violate *Apprendi*.

Affirmed.